**Honorable Judge Richard A. Jones**

# UNITED STATES DISTRICT COURT
for the WESTERN DISTRICT of WASHINGTON at SEATTLE

*Ashley M. Gjovik* (*pro se*),

                          Plaintiff(s),

        v.

*State of Washington, et al.*

                          Defendant(s).

CASE NO. 2:22-CV-00807-RAJ-BAT

**EMERGENCY MOTION FOR INJUNCTIVE RELIEF**

NOTE ON MOTION CALENDAR: PROSPOSED FOR JUNE 24 (1ST FRIDAY)

*Emergency Relief Required Before Direct Risk of Incarceration on June 30 2022*

## I.    INTRODUCTION

1. Gjovik introduces an emergency motion for preliminary injunctive relief and/or emergency TRO, under 18 U.S.C. 1514, NLRA Preemption, All Writs Act, and Rule 65, to invalidate the state Order against her and stop the open appeal on the matter.  This emergency relief is required to prevent pretrial irreparable injury and to preserve the U.S. District Court's ability to provide relief after a decision on the merits.  *Univ. of Tex. v. Camenisch,* 451 U.S. 390,

1  395 (1981); *Lopez v. Brewer,* 680 F.3d 1068, 1072 (9th Cir. 2012). Outside of injunctive and

2  equitable relief, there are no other legal or practical remedies, and at this rate Gjovik's next

3  motion could easily be a writ of habeas corpus. *Sampson v. Murray*, 415 U.S. 61, 88 (1974);

4  *FTC v. Consumer Def., LLC*, 926 F.3d 1208, 1213 (9th Cir. 2019).

5      2. Gjovik, a California resident & federal whistleblower against Apple Inc (e.g., Dkt #

6  10), is currently subject to a content-based, prior-restraint "gag-order" issued against her, ordered

7  by the courts of the state of Washington, empowered by the overbroad and vague laws of the

8  state of Washington, and based on her activities as a federal witness and informant, including

9  with the U.S. NLRB, and based on her publication of already public records related to the

10 witness intimidation. (e.g., Dkt. # 1). The state of Washington Judge based this extraordinary

11 gag-order on the fact that Gjovik "repost[ed] [already public information] to other people" in a

12 federal legal memo and declared that "harassment." (e.g., Dkt. # 1 at pg. 36) The *ex parte*

13 Petitioner had testified she requested the Order against Gjovik because Gjovik filed an NLRB

14 charge in January 2022 against Apple Inc, alleging witness intimidation and retaliation, and

15 naming Petitioner as an agent of Apple Inc in the misconduct. (e.g., Dkt. # 1 #10) (Exhibit D, H).

16     3. The only information at issue that Gjovik shared unrelated to the witness intimidation,

17 was unintentionally posting on Twitter an already public photo of a cat. (3/1 Transcript, pg 16,

18 46-47).  The Judge specifically noted in her decision, the Order was granted against Gjovik

19 partially on the basis of Gjovik re-posting "information about [a] pet." (3/1 Transcript, pg 16, 46-

20 47). Gjovik currently faces daily risk of incarceration due to complaining to the federal

21 government and the public about federal witness intimidation, and posting a photo of a cat on

22 Twitter. (Exhibit F).

23     4. The Petitioner for the order was an employee in Apple Inc's "Global Security" team.

24 ..(e.g., Dkt. # 1 at pg. 10). The Order prohibits Gjovik from having contact with the Petitioner

(despite the Petitioner admitting there had been none prior for months), and prohibits surveillance of the Petitioner (despite Gjovik's protests of obstruction to her gathering evidence of Petitioner's ongoing federal witness intimidation). The Order also prohibits Gjovik from making any statements on any medium about Petitioner for five-years. The only exception the Judge provided was that Gjovik could still "testify" to the courts and agencies about her allegations against the Petitioner, thus implying all other speech is forbidden. Punishment for breaking the Order is a gross misdemeanor and contempt of court, with thousands of dollars of fines and up to 364 days of incarceration per violation. RCW 7.21.

5. Under the Order, Gjovik cannot interact with Petitioner, including with the state appeal of the Order. Gjovik cannot talk to lawyers about Petitioner's actions, the appeal, or the Order without apparently violating the Order. Gjovik is unsure what she can tell the government & law enforcement about Petitioner's ongoing witness intimidation. Gjovik's lawyer for the Order unexpectedly withdrew last month and Gjovik has been unable to obtain new counsel despite much effort, forcing Gjovik to take responsibility for drafting and submitting an appellant brief by June 30 2022, which would violate the order in numerous ways and thus lead to risk of multiple years in jail.  In a matter of days Gjovik will be forced to submit and serve an appellant brief which breaks the very Order she must appeal, and delivers evidence of the violation of the very people who can report Gjovik's violation and seek enforcement. If Gjovik takes no actions, she will miss court deadlines and face dismissal with prejudice, sanctions, and fees. King County Superior Court Local Rule 4(g)-(i). There is no path to escape this issue within the state.

6. The state of Washington's interference with Gjovik's federal cases does not appear to be an anomaly, as the state is also codifying that starting July 1 2022. "*The petition may be made regardless of whether or not there is a pending lawsuit, complaint, petition, or other action between the parties.*" RCW 7.105.105(5).  However, state courts are forbidden from entertaining

1 jurisdiction over federally created causes of action if Congress has explicitly or implicitly made

2 federal court the exclusive jurisdiction. *Gulf Offshore Company v. Mobil Oil Corporation*, 453

3 U.S. 473, 477–78 (1981). The state of Washington cannot be trusted to handle this matter

4 properly, as they've already forced Gjovik into this Kafkaesque nightmare.[1]

## II. EMERGENCY MOTION FOR PRELIMINARY INJ. RELIEF / TRO ON RO

6     7. Gjovik, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and Local Rule

7 65, as well as under the All Writs Act, moves this Court for entry of an Emergency Injunction

8 enjoining the Defendant state of Washington from enforcing the "Order" that was applied against

9 Gjovik. .(e.g., Dkt. # 1, Attch # 1, at pg. 13), to directly enjoin the Order and case, and to enjoin

10 the state court proceeding on the matter. (e.g., Dkt. # 10 at pg. 2-3). Gjovik files this motion for

11 Emergency Injunctive Relief to enjoin, vacate, and/or otherwise declare invalid the entire Order

12 against her. Gjovik also files this motion to enjoin, stay, void, or otherwise address the unlawful

13 state court hearing on the Order.

14     8. This Court may order injunctive relief through 28 U.S. Code § 1651, "All Writs Act"

15 powers, or via its other discretionary powers in equity. "[t]he Supreme Court and all courts

16 established by Act of Congress may issue all writs necessary or appropriate in aid of their

17 respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

18 The general rule is a private party may seek federal declaratory and injunctive relief against the

19 enforcement of a state statutory scheme on the ground of federal preemption. *Bud Antle, Inc. v.*

20 *Barbosa*, 45 F.3d 1261, 1269 (9th Cir. 1994); See *Shaw v. Delta Air Lines, Inc*., 463 U.S. 85, 96

21 n. 14, 103 S.Ct. 2890, 2899, n. 14, 77 L.Ed.2d 490 (1983). While these cases were not against

22 governments, Gjovik is put in a situation where a party *ex parte* to Gjovik's Apple Inc cases,

---

[1] See: Franz Kafka, The Trial (1925).

1  sued Gjovik about Gjovik's federal Apple Inc cases. Apple Inc *is ex parte* to the Order. It would

2  break the Order to sue Petitioner. Gjovik sues the state of Washington out of desperation.

3      9. "Whereas traditional injunctions are predicated upon some cause of action, an All

4  Writs Act injunction is predicated upon some other matter upon which a district court has

5  jurisdiction. Thus, while a party must "state a claim" to obtain a "traditional" injunction, there is

6  no such requirement to obtain an All Writs Act injunction—it must simply point to some

7  ongoing proceeding, the integrity of which is being threatened by someone else's action or

8  behavior." *Rohe v. Wells Fargo Bank, N.A.,* 988 F.3d 1256, 1265 (11th Cir. 2021). It is widely

9  accepted that federal courts possess power under the All Writs Act to issue narrowly tailored

10  orders enjoining vexatious litigants from abusing the court system by harassing opponents, and

11  even to impose sanctions. *Newby v. Enron Corp*., 302 F.3d 295, 301 (5th Cir. 2002); *Harrelson*

12  *v. U.S.*, 613 F.2d 114, 116 (5th Cir.1980); *Chambers v. NASCO, Inc.,* 501 U.S. 32, 39 (1991).

13      10. This motion is based on the following grounds:

14  -  The hearing and appeal are unnecessary because the matter is unwarranted & patently

15     unconstitutional and preempted by federal law and powers. (NLRA, 18 U.S.C. 1514).

    -  The Order is a hopelessly vague, overbroad, and content-based prior restraint. (1st and

16     14th Amendments).

17  -  The Petitioner testified under oath she requested the Order against Gjovik, based on

18     Gjovik's complaints to the federal government about federal witness intimidation by

       the Petitioner. (e.g., Dkt. # 1 at pg. 63, 81).  (18 U.S.C. 1514).

19  -  The Order was based on fully protected activities under the United States,

20     Washington, and California constitutions: publishing public information and public

21     records about public figures and matters of public concerns; reporting unlawful

       activities to the government including federal witness intimation and retaliation;

22     publishing reports on legal matters of public concern.  (47 U.S.C. § 230, *Kimzey v.*

23     *Yelp! Inc.,* 836 F.3d 1263, 1270 (9th Cir. 2016), *Catlett v. Teel*, 15 Wash. App. 2d

24     689, 704, 477 P.3d 50, 59 (2020); RCW 42.56.001, RCW 42.56.550(3), etc.)

- Any further hearings, evidence, briefs, etc Gjovik must provide to defend herself from Petitioner, will further interfere with Gjovik's open federal cases and open Gjovik up to more harm. (18 USC 1514).

11. It's impossible to salvage the Order against Gjovik in any way and thus it must be enjoined in order to protect Gjovik from even more severe, irreparable harm. Pursuant to the All-Writs Act, a federal court may enjoin actions in other jurisdictions that would undermine its ability to reach and resolve the merits of the federal suit before it. 28 U.S.C.A. § 1651(a). Gjovik still does not believe she can legally write Petitioner's name in these legal filings. Gjovik also worries in even saying "Petitioner" she is breaking the Order as she is prohibited from making statements about Petitioner's "names" (plural). "**Respondent shall not make any statements or posts or other publications about Petitioner, including but not limited to, petitioner's medical information, petitioner's family, petitioner's names, on any social media or internet or other medium. Nothing about this Order prohibits Respondent from testifying in administrative or judicial proceedings.**" *[REDACATED] v Gjovik*, Case No. 22CIV01704KCX, King County District Court (Mar. 2022). (e.g., Dkt #1, Att #1 at pg 13). This federal proceeding is undermined by Gjovik's inability to provide basic information to the court.

12. Here, this Motion is based on the pleadings on file in the case, the attached Memorandum, Appendix with Exhibits, Docket, and any such other evidence that the Court should hear in this case. This Motion for Injunctive Relief is directly related to the larger matter at issue here, as this Order and the appeal for the Order, are based on, caused by, enabled by, and enforced by the state of Washington's incredibly unlawful statutes. Fortunately, Article III Federal courts have inherent equitable power to grant injunctive relief. *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979). *Rodriguez v. Hayes,* 591 F.3d 1105, 1120 (9th Cir. 2010).

13. In addition to NLRA Preemption and 18 U.S.C. § 1514 injunctive relief, statutes for additional pending actions (e.g., Docket # 10, Notice of Pendency), also possess injunctive powers including 29 U.S.C.A. § 662 (OSH Act, "*district court shall have jurisdiction to grant such injunctive relief or temporary restraining order*"); 18 U.S.C. § 1514A (SOX, see *Halliburton, Inc. v. Admin. Rev. Bd., 771 F.3d 254, 264 (5th Cir. 2014)*) finding that SOX provides "*all relief necessary to make the employee whole*" including injunctive relief), and 29 U.S.C.A. § 104 & 29 U.S.C.A. § 107 (federal policy greatly disfavoring labor-related restraining orders).

14. The Norris-LaGuardia Act is not an issue as the "act does not bar issuance of injunctions to prevent third parties from interfering with labor disputes of others." 29 U.S.C.A. § 101. Here, the labor dispute is between Gjovik and Apple Inc. While Petitioner may have been named in Gjovik's charges, Petitioner is not party to Gjovik's labor dispute with Apple Inc.

### III.  LEGAL STANDARD

15. Complaint and summons were properly served via FRCP 4 and RCW 4.92.020,[2] per the Attorney General's published instructions. (e.g., Dkt #1).  The court does not have to determine subject matter jurisdiction to order pre-trial injunctive relief. *United States v. United Mine Workers*, 330 U.S. 258, 290 (1947).  Congress, by statute, may require that courts review an application for pretrial injunctive relief under a standard that differs from traditional equitable standards, may be far more lenient. See *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982). Additionally, in First Amendment challenges to state statutes, standing requirements are quite relaxed. *City of Lakewood v. Plain Dealer Pub. Co.,* 486 U.S. 750, 760 (1988). The Court

---

[2] RCW 4.92.020: Service of summons and complaint in such actions shall be served in the manner prescribed by law upon the attorney general, or by leaving the summons and complaint in the office of the attorney general with an assistant attorney general.

1    intends to give a platform to the few who are brave enough to step forward on behalf of the many

2    others too fearful to fight back. *Canatella v. California*, 304 F.3d 843, 853 n.12 (9th Cir. 2002).

3        16. The purpose of a preliminary injunction is to preserve the status quo if the balance of

4    equities so heavily favors the moving party that justice requires the court to intervene to secure

5    the positions until the merits of the action are ultimately determined. *University of Texas v.*

6    *Camenisch,* 451 U.S. 390, 395 (1981); *Winter v. Natural Resources Defense Council, Inc*., 555

7    U.S. 7, 129 S. Ct. 365, 374 (2008) "[W]hen a Plaintiff has shown a likely violation of his or her

8    First Amendment rights, the other requirements for obtaining a preliminary injunction are

9    generally deemed to have been satisfied." *Phelps-Roper v. Troutman*, 662 F.3d 485, 488 (8th Cir.

10   2011).

11       17. It is a well-established rule that where Congress expressly provides for injunctive relief

12   to prevent violations of a statute, a plaintiff does not need to demonstrate irreparable harm to

13   secure an injunction. See *United States v. City of San Francisc*o, 310 U.S. 16, 31 (1940);

14   *Atchison, T. and S. F. Ry. Co. v. Lennen*, 640 F.2d, 259–260 (1981). In such situations, it is not

15   the role of the courts to balance the equities between the parties. The controlling issue is whether

16   Congress has already balanced the equities and has determined that, as a matter of public policy,

17   an injunction should issue where the defendant is engaged in, or is about to engage in, any

18   activity which the federal statute prohibits. *Burlington N. R. Co. v. Bair*, 957 F.2d 599, 601–02

19   (8th Cir. 1992).

20       18. Because Washington subjects Gjovik to the untenable choice between self-censorship

21   and forsaking her Access to Courts, risking criminal and civil liability, the laws impose

22   irreparable harm, threaten the public interest, and tip the balance of equities heavily in favor of

23   granting a preliminary injunction. Thus, all four *Winter* factors favor the grant of a preliminary

24   injunction.  Even the state of Washington agrees with the irreparable harm Gjovik faces. "The

1  legislature recognizes that persons convicted and imprisoned for crimes they did not commit

2  have been uniquely victimized." Those wrongly convicted suffer "tremendous injustice by being

3  stripped of their lives and liberty." RCW 4.100.010

4      19. The All Writs Act, 28 U.S.C. § 1651(a), provides federal courts with the power to

5  "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to

6  the usages and principles of law." This grant of authority is limited by the Anti–Injunction Act,

7  28 U.S.C. § 2283, which bars a federal court from enjoining a proceeding in state court unless

8  that action is "expressly authorized by Act of Congress, or where necessary in aid of its

9  jurisdiction, or to protect or effectuate its judgments." *Ret. Sys. of Ala. v. J.P. Morgan Chase &*

10  *Co.*, 386 F.3d 419, 425 (2d Cir. 2004). Here, we have numerous express acts of Congress

11  empowering the court.

12  **i.      Jurisdiction and Authority for Intervention under 18 USC 1514**

13      20. Petitioner directed the state court to Gjovik's "legal memo" in the petition for a

14  restraining order and referenced the memo numerous times during the state hearing. The Judge

15  engaged on this, knowing it was a legal memo, and cited it as part of the basis for the finding of

16  harassment against Gjovik. This "memo" was a hybrid legal memo featuring embedded exhibits,

17  that was paired with a formal brief with lengthy legal analysis. (e.g. Dkt #1, Attach #1, at pg 15).

18  Gjovik had addressed the legal memo at issue to the U.S. NLRB, U.S. Department of Labor, U.S.

19  District Attorney's Office, California Dept. of Justice, and California Dept. of Labor noting her

20  open cases and charges with the above as well was the U.S. SEC & U.S. SEC and under

21  "Charges" included violations of the NLRA, CERCLA, SOX, OSHA, and 18 U.S.C. 1512 &

22  1513. (e.g., Docket #1, pg. 16-17, Attach. #1 pg. 15). The memo was titled "*Ashley Gjovik v*

23  *Apple Inc: Intimidation, Threats, & Obstruction / Evidence Report v9.*" (e.g., Docket #1, Attch.

24  #1 pg. 15).  The U.S. NLRB, U.S. Dept of Labor, and California Dept of Labor confirmed

1   receipt of the memos and have been actively reviewing the. (e.g., Docket #10, Attch. #1 pg. 6, 7,
2   14-17).

3       22. Two of the U.S. statutes Gjovik referenced in the memo were 18 U.S. Code § 1512
4   which prohibits tampering with a witness, victim, or an informant and 18 U.S. Code § 1513
5   which prohibits retaliating against a witness, victim, or an informant. (Exhibit H). Gjovik alleged
6   in her complaint and legal memos that Apple Inc has likely violated these federal statutes in their
7   conduct towards her, including but not limited to Petitioner's conduct well before the lawsuit.
8   (Exhibit D & H). Prosecution under these statutes can occur in the district where the protected
9   activities occurred or where the alleged offenses occurred. 18 U.S. Code § 1513(g); 18 U.S.
10  Code § 1512(i). The 2002 Sarbanes-Oxley amendments to the Victim and Witness Protection
11  Act of 1982 expanded the VWPA to criminalize "any act of intentional retaliation" taken against
12  federal informants and witnesses. 18 U.S.C. § 1513(e).

13      23. 18 U.S.C. § 1514 enables federal courts to engage in civil actions to restrain
14  harassment of a victim or witness, including but not limited to offenses under § 1512 or under §
15  1513, and action can be initiated by the courts own motion.  18 U.S.C. § 1514(b)(1). *U.S. v.*
16  *Cofield*, 11 F.3d 413, 418, n.6 (4th Cir. 1993), cert. denied, 510 U.S. 1140 (1994); *U.S. v. Tison*,
17  780 F.2d 1569 (11th Cir. 1986). With witness intimidation or obstruction; intent or 'endeavor'
18  can be enough." *United States v. Vixie,* 532 F.2d 1277, 1278 (9th Cir.1976); *United States v.*
19  *Price*, 951 F.2d 1028, 1031 (9th Cir. 1991).

20      24. The VWPA commands a court to issue a protective order to prohibit harassment of a
21  witness in a federal criminal investigation. Moreover, "while the [Anti-Injunction Act] generally
22  prohibits federal courts from enjoining state court litigation, the VWPA acts as an exception to
23  the general rule, since it creates 'a specific and uniquely federal right or remedy ... that could be
24  frustrated' in the absence of an injunction." 28 U.S.C. § 2283. 18 U.S.C. § 1514(b)(1). *Mitchum*

1    *v. Foster,* 407 U.S. 225, 237–38, (1972); *In re Grand Jury Subpoena,* 267 F. Supp. 3d 741, 744–

2    45 (N.D. Tex. 2016), aff'd, 866 F.3d 231 (5th Cir. 2017); *United States v. Tison*, 780 F.2d 1569,

3    1573 (11th Cir. 1986); *United States v. Lewis*, 411 F.3d 838, 844 (7th Cir. 2005).

4        25. Actions filed without legitimate purpose may qualify as unlawful harassment and

5    hence constitute an attempt to intimidate or unlawfully influence a witness. See *U.S. v. Lewis*,

6    411 F.3d 838, 845-46 (7th Cir.2005) (upholding application of 18 U.S.C. § 1514 to enjoin a civil

7    lawsuit filed for illegitimate purposes as witness harassment); *United States v. Tison,* 780 F.2d

8    1569, 1571-73 (11th Cir. 1986) (same). *United States v. Kilbride*, 584 F.3d 1240 (9th Cir. 2009).

9    As recently as May 24 2022, Petitioner continues to intimidate and tamper with Gjovik, posting

10   publicly in response to an article Gjovik had published calling Gjovik's NLRB charges

11   "frivolous," noting she sent the NLRB "novels" about Gjovik, and arguing Gjovik should not be

12   allowed to have "settlements, supplemental affidavits, [or get] witness testimony." (Exhibit I,

13   Gjovik was made aware and captured this evidence at risk of incarceration)

14       26. Washington's own statutes also support the policy behind enjoining the state lawsuit

15   and Order here. The purpose of Wash. Rev. Code § 4.24.500-520 is "to protect individuals who

16   make good-faith reports to appropriate governmental bodies." The section provides civil

17   immunity in causes of action asserted in a civil action against a person based on the person's:

18   "(b) Communication on an issue under consideration or review in a legislative, executive,

19   judicial, administrative, or other governmental proceeding; (c) Exercise of the right of freedom

20   of speech or of the press, the right to assemble or petition, or the right of association, guaranteed

21   by the U.S. Constitution or Washington state Constitution, on a matter of public concern." RCW

22   4.105.010(2)(b)-(c). Gjovik had introduced a motion under this statute during the February 15

23   2021 hearing. (e.g., Docket #1, Attch. #1 pg. 35-39). The state judge did not rule on it.

24

1    27.  Upon giving notice to file the motion, the proceedings between the parties were to be

2    stayed until entry of an order ruling on the motion. 4.105.030(1)-(3). The provisions of the

3    statute were to be "*broadly construed and applied to protect the exercise of the right of freedom*

4    *of speech and of the press, the right to assemble and petition, and the right of association,*

5    *guaranteed by the U.S Constitution or the Washington state Constitution.*" RCW 4.105.901.

6    Enjoining is in line with the public policy of the state of Washington to enjoin and/or stay the

7    state at issue here proceedings, along with enjoining the Order against Gjovik.

8       **ii.      Jurisdiction and Authority for Intervention under the NLRA**

9       28. Petitioner's testimony, evidence, and petition for the restraining order against Gjovik

10   specifically pointed to Gjovik's NLRB charge against Apple Inc, and an associated legal brief, as

11   somehow annoying, alarming or annoying her. (e.g. Dkt  #1, Attch #1, Exhibit B).  In *Bill*

12   *Johnson's Restaurants, Inc. v. NLRB*, the Supreme Court found state lawsuits without a

13   reasonable basis (like this petition, simply based on public information and complaints to the

14   government), and made with an unlawful objective (as this petition was an attempt to silence an

15   informant), are not protected under Right to Petition. 461 U.S. 731 (1983). Indeed, retaliatory

16   lawsuits have even been found to constitute retaliation and unfair labor practices. *Id; Power*

17   *Systems, Inc*., 239 N.L.R.B. 445, 449-450 (1978).  The retaliatory lawsuit can still constitute an

18   unfair labor practice even if the Plaintiff/Petitioner is not directly with the employer. *Ashford*

19   *TRS Nickel,* NLRB Administrative Judge Opinions, No. 19-CA-032761. Indeed, Gjovik reported

20   the matter. While the NLRB will likely come to similar findings here, the timeline for NLRB

21   decisions and actions is too slow to address the issue at hand.

22      29. Under the "well established" *Garmon doctrine,* the NLRA preempts state law claims

23   for relief that are based on conduct that is "arguably" protected or prohibited by the NLRA. *San*

24   *Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236 (1959); *Bud*

1    *Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1268 (9th Cir. 1994). In two exceptions to *Garmon*, the

2    NLRA will not preempt state action which regulates activity of "a merely peripheral concern" to

3    the Act or "where the regulated conduct touche[s] interests so deeply rooted in local feeling and

4    responsibility." *Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261, 1268 (9th Cir. 1994);.*Farmer v. United*

5    *Brotherhood of Carpenters & Joiners, Local 25*, 430 U.S. 290 (1977). Here, the "order" against

6    Gjovik is judicial lawmaking, thus a state law. The underlying conduct that formed the basis for

7    the state action, was admittedly Gjovik's NLRB charge and legal brief against Apple Inc.

8    Restraining and prosecuting Gjovik for engaging in federal whistleblowing should not be

9    "deeply rooted in Washington's local feelings."

10       30. The basic concern underlying the *Garmon* doctrine is "the interest in preserving a

11   uniform national labor policy and protecting employees and employers from local regulation

12   which conflicts with the NLRA's centralized regulatory scheme." *Bud Antle, Inc. v. Barbosa,* 45

13   F.3d 1261, 1270 (9th Cir. 1994). The NLRB and 9th Circuit agreed, "private parties must be

14   empowered affirmatively to invoke the *Garmon* doctrine on their own behalf." *Id.* Further, under

15   the *Machinists doctrine*, states are prohibited from interfering with conduct in the labor-

16   management sphere that Congress intended to be unregulated by either state or federal law.

17   *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers v. Wisconsin Employment Relations*

18   *Comm'n,* 427 U.S. 132 (1976). The *Machinists doctrine* recognizes that there are areas of labor-

19   management relations not within the jurisdiction of the Board, and thus not subject *to Garmon*

20   *preemption,* but nonetheless outside the proper scope of state regulation. *Metropolitan Life Ins.*

21   *Co. v. Massachusetts,* 471 U.S. 724, 749 1985); *Garmon*, 359 U.S. 236 (1959). Even if some of

22   Gjovik's speech wasn't directly under NLRA/Garmon, Machinists covers the remainder.

23       31. Congress vested primary jurisdiction over the elaboration of labor policy and the

24   adjudication of labor disputes in the NLRB. See, e.g., N.*L.R.B. v. Truck Drivers Local Union No.*

1   *449*, 353 U.S. 87, 96 (1957)  The *Garmon doctrine* stands for the principle that potential, rather

2   than actual conflict between a state law claim and federal labor law is sufficient to require

3   preemption of the state law claim. If a claim brought under state law alleges conduct that

4   "arguably" is subject to section 7 or section 8 of the NLRA, "*the States as well as the federal*

5   *courts must defer to the exclusive competence of the National Labor Relations Board if the*

6   *danger of state interference with national policy is to be averted*." *Garmon* at 359 U.S. 236, 245

7   (1959). The state Order against Gjovik is in conflict with Gjovik's prior NLRB charge against

8   Apple Inc, and is based on Gjovik's conduct which is "arguably" subject to section 7 of the

9   NLRA (complaining of unfair labor practice and witness intimidation due to her NLRB charges).

10      32. Preemption under these doctrines does not require that a plaintiff have a remedy

11   before the NLRB, or even that the NLRB will hear the claim in the first place. *Garmon* at 359

12   U.S. 236 (1959); *Bassette v. Stone Container Corp*., 25 F.3d 757, 759-60 (9th Cir. 1994).

13   Instead, once a court determines that a plaintiff's claim alleges conduct that is "arguably" or

14   "potentially" subject to regulation or protection under the NLRA, federal labor law preempts

15   state law and the NLRA has exclusive jurisdiction. *Id.* Retaliatory state lawsuits may also violate

16   Section 8(a)(1) when preempted by the NLRA and violate Section 8(a)(1) of the NLRA when it

17   interferes with NLRB processes. *Id, Motor Coach Employees v. Lockridg*e, 403 U.S. 274, 286-88

18   (1971*); Garner v. Teamsters Union,* 346 U.S. 485, 490-91 (1953).

19      33. The NLRA can and has preempted state issued restraining orders. *Carpenters Union*

20   *Loc. No. 1109 v. N.L.R.B.,* 209 F. App'x 692, 694 (9th Cir. 2006), order amended, cause

21   remanded, 219 F. App'x 654 (9th Cir. 2007), The state court only had "discretionary power to

22   enjoin [an employee] from engaging in violent behavior," but not to enjoin communicating or

23   organizing with other workers, picketing, etc. *Youngdahl v. Rainfair, Inc*., 355 U.S. 131, 139

24   (1957). A state restraining order based upon an NLRB charge and NLRB legal memo is no doubt

1  preempted by federal law, and a state order prohibiting discussion by a labor organizer against

2  another person involved in labor organizing is also no doubt void.

3      34. Here, Petitioner documented her retaliatory animus in the Petition for a Restraining

4  Order writing "On January 11 2022, [Gjovik] filed an NLRB charge against Apple Inc claiming

5  [Petitioner] was harassing [Gjovik] on Apple's behalf. I have not harassed her. On January 31

6  2022 she published a 'memo' for that charge containing defamatory and private information

7  about me (and others)." (Complaint Exhibit B) Petitioner included a link to the draft of the memo

8  with the URL showing the title as "*U.S. NLRB Ashley Gjovik Apple Inc Jan 10 2022 Charge*

9  *Draft* 1." (Orig. Complaint Appendix pg 8 of 67, screenshot of Petition, box B). Under "other

10  litigation" petitioner write "*NLRB Charge CA-288816 – charge against Apple Inc which*

11  *contains false/misleading information about me made in bad faith by Ashley Gjovik.*" (e.g.,

12  Docket #1, Att #1, pg 9, screenshot of petition, box 12).

13      35. Petitioner also testified under oath that the NLRB supposedly contacted her and told

14  her she needed to call the police or request a protection order against Gjovik, and also claims the

15  NLRB told her Gjovik's Petition was filed in bad faith. Petitioner testified "*This is what caused*

16  *me to do this, is because the director of security at the National Labor Relations Board believes*

17  *that [Gjovik] filed a charge with the intent to harass me on January 11th…. They contacted me. I*

18  *have a voicemail from them*." (e.g., Docket #1, pg 81, line 14-20 quoting Feb 1 2021 ex parte

19  hearing transcript). The state Judge asked to hear the voicemail, but Petitioner never provided it

20  and dropped the argument after.

21      36. The U.S. NLRB has denied Petitioner's statements, with Asst. General Counseling

22  telling Gjovik no one gave Petitioner legal advice, directed her to take action against Gjovik, and

23  offered no opinion on the merits of Gjovik's charges. (e.g., Docket #1, Attch #1, pg 67, Exhibit

24  L: NRLB Denials). When the NLRB reviews Gjovik's pending claim against Apple Inc for post-

termination harassment, now including a retaliatory lawsuit, the Petitioner's sworn claims will no doubt be reviewed as part of the charge.[3]   Thus, under apparently false pretenses and false statements, Petitioner attempted force Gjovik into an out of state courtroom, to informally introduce cross-claim-like accusations against Gjovik. The questions as to whether Petitioner harassed Gjovik (and if so, if as an agent of Apple) and/or if Gjovik harassed Petitioner, rest on substantially the same facts.

37. It does not matter that Gjovik's NLRB "charges" were not yet docketed cases. As the 8th Circuit wrote, "In our view, it would be absurd to hold that Congress meant to proscribe interference with the administrative process only after a Labor Board proceeding had reached a certain formal stage and let go unpunished individuals who obstruct earlier preliminary proceedings by frightening witnesses into withdrawing charges out of fear for their lives. Congress clearly intended to punish any obstruction of the administrative process by impeding a witness in any proceeding before a governmental agency— at any stage of the proceedings, be it adjudicative or investigative." *Rice v. United States*, 356 F.2d 709, 712–13 (8th Cir. 1966). Other appellate courts have agreed. *United States v. Sutton*, 732 F.2d 1483, 1490 (10th Cir.1984); *United States v. Vixie,* 532 F.2d 1277, 1278 (9th Cir.1976).  The 9th Circuit as recently wrote that it is enough that proceedings were pending or about to be instituted, or that the perpetrator thought they may be and had intent to obstruct. *United States v. Ermoian*, 752 F.3d 1165, 1172 (9th Cir. 2013), as amended (Aug. 28, 2013)

38. Finally, the state action has and continues to severely interfere with national labor policy. Gjovik's charges against Apple Inc are strong and unique, it's been expected her charges

---

[3] RCW 9A.72.020 Perjury in the first degree. RCW 9A.72.030 Perjury in the second degree. RCW 9A.72.040 False swearing. RCW 9A.72.050 Perjury and false swearing—Inconsistent statements. RCW 9A.72.110 Intimidating a witness. RCW 9A.72.120 Tampering with a witness. RCW 9.62.010 Malicious prosecution.

may be used to overturn legal precedent for the new pro-labor administration. .*Farmer v. United Brotherhood of Carpenters & Joiners, Local 25*, 430 U.S. 290 (1977).

> "The rule described in Cook's memo and the policies cited in Gjovik's complaint might be deemed legitimate under the Trump-era Boeing standard, but "most if not all" of them would probably be illegal under earlier, more pro-labor precedents, said University of Wyoming law professor and former NLRB attorney Michael Duff. A case like Gjovik's offers the Biden appointees "an attractive vehicle" to establish a precedent more like the pre-Trump ones, which prohibited rules that workers could "reasonably construe" as banning legally protected activism, Duff said in an email." -Bloomberg, October 12 2021[4]

Gjovik's SOX, CERCLA, & OSHA cases have also been noteworthy, even included on the front page of the Financial Times on Dec 13 2021.

> "The US Department of Labor is investigating Apple over claims that it retaliated against an employee who complained of workplace harassment and unsafe working conditions. Ashley Gjovik, 35, had been a senior engineering program manager for six years at Apple when she was fired in September for allegedly leaking confidential information. An employment lawyer and an expert in US whistleblowing law, said the burden of proof needed for the agency to open an investigation was high, as the employee must have already established enough evidence that, unless rebutted, would prove the case. He said the case would be closely watched because it was especially rare for a labour dispute with Big Tech "to break into the public" domain. The labour department rarely investigated such cases, he added, because of the widespread use of non-disclosure agreements to "silence and intimidate whistleblowers".[5] -Financial Times, Dec 13 2021

39. The state of Washington knowingly intruded into a high-profile, high-stakes federal investigation to make its own decision on questions of facts and law the federal government was already considering. The state court did not have subject matter jurisdiction to hear the claim. *Garner v. Teamsters,* 346 U.S. 485 (1953) (grievance within jurisdiction of National Labor Relations Board to prevent unfair labor practice not subject to relief by injunction in state court).

---

[4] J. E., Apple CEO's Anti-Leak Edict Broke Law, Ex-Employee Alleges, Bloomberg, (October 12 2021), https://www.bloomberg.com/news/articles/2021-10-12/apple-ceo-s-anti-leak-edict-broke-the-law-ex-employee-alleges

[5] Apple faces probe over whether it retaliated against whistleblower, US labour department inquiry follows claims by ex-senior engineering program manager, Financial Times (Dec 13 2021), https://www.ft.com/content/973aae8d-21d9-4e84-8912-ead071c7935d

EMRG. MOTION FOR. INJ.                                            PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                                              (408) 883-4428

There is statutory injunctive relief within the NLRA, expressing Congress' wish that the NLRA include injunctions and equitable relief. National Labor Relations Act 10(j).

### IV.  IRREPARABLE HARM ABSENT RELIEF

40. The Ninth Circuit makes clear that a showing of immediate irreparable harm is essential for preliminary injunctive relief. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988), *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The irreparable harm here is clear and indisputable. However, it is "well established that the deprivation of constitutional rights unquestionably constitutes irreparable injury," *Melendres* v. *Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). "Unchecked retaliation subverts" federal law and "the resulting weakened enforcement of federal law can itself be irreparable harm in the context of a preliminary injunction application." *Mullins v. City of New York*, 626 F.3d 47, 55 (2d Cir. 2010)

41. Here, Petitioner submitted her petition for an order against Gjovik because of Gjovik's NLRB charge, and in the petition, Petitioner called Gjovik's federal charges "meritless" and made "in bad faith." Petitioner directly challenged a legal brief Gjovik had submitted to the federal government, that among many other things, accusing Petitioner of federal witness intimidation. Petitioner went to state court to get a ruling that Gjovik's accusations of federal witness intimidation to federal courts was "harassment" under state laws. (Exhibit). The 9th Circuit has ruled that when a person named by a witness, files a "a lawsuit days before the witness was scheduled to testify against [that person, it] constituted an attempt to threaten or intimidate [the witness] into not testifying at his trial." *United States v. Kilbride,* 584 F. 3d 1240, 1241-42 (9th Cir. 2009); *United States v. Sandhu No.* 2:15-cr-00231-GEB-1 (E.D. Cal. May. 12, 2017).

42. Gjovik's injury is fairly traceable to the state of Washington. State of Washington has even codified its liability for personal harm, saying "The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation." RCW 4.92.090. In actions and claims against the state of Washington, the state has designated that the "attorney general or an assistant attorney general shall appear and act as counsel for the state. The action shall proceed in all respects as other actions." RCW 4.92.030

43. Gjovik's fear of arrest and incarceration due to conduct fully protected by the U.S. Constitution is direct, imminent, and understandable with the legacy and ongoing cases and controversies related to misconduct by Seattle' law enforcement, including the Seattle police being subject to the terms of a Federal Consent Decree since 2012.[6] *U.S. v Seattle*, Case 2:12-cv-01282-JLR, Western Washington District Court (2012).

## V.   LIKELIHOOD OF SUCCESS ON THE MERITS

44. The matter at hand is patently unconstitutional. Because all Twitter posts (despite simply containing public records, public information, and viewpoint) were deleted out of fear before the full hearing, and the only matter that was ripe & at issue was Gjovik's legal memo which, as the Petitioner admitted, contained public information (put forward as evidence).. (e.g., Dkt. # 1 at pg. 59). The basis of the Order was unlawful under Washington's own laws as, "Course of conduct [] does not include constitutionally protected free speech. Constitutionally protected activity is not included within the meaning of course of conduct." RCW

---

[6] U.S. DOJ, Investigation of the Seattle Police Department (2011), https://www.justice.gov/sites/default/files/crt/legacy/2011/12/16/spd_findletter_12-16-11.pdf; *Reform for a City with a Legacy of Police Corruption*, Seattle Magazine (2017), https://seattlemag.com/article/reform-city-legacy-police-corruption, Re: Request to Investigate Pattern or Practice of Misconduct by Seattle Police Department, ACLU (2010), https://www.aclu-wa.org/pages/re-request-investigate-pattern-or-practice-misconduct-seattle-police-department ; Timeline of Seattle Police Accountability, ACLU, (2020), https://www.aclu-wa.org/pages/timeline-seattle-police-accountability

7.105.010(5)(a); RCW 10.14.020(1). Further, starting in July 1 2022, Orders "shall not prohibit the respondent from exercising constitutionally protected free speech." RCW 7.105.310(2).

45. The petition, hearing, and Petitioner's evidence consisted of further witness intimidation, including several accusations that Gjovik's charges and cases were meritless and made in bad faith, as well as and persistent demands for Gjovik to modify her federal charges including removing specific evidence and dropping allegations against Petitioner as a named agent of Apple. (Exhibit A) Despite Gjovik's numerous motions and objections, pleading for her U.S. Constitutional rights, for protection as a witness and informant, and for the state court to cease intervening in federal matters -- the state court did not. (e.g., Dkt. # 1 at pg. 73-74). Ultimately under the supervision and oversight of Washington's Attorney General and Governor, the state issued an Order based on their statutes, against Gjovik, prohibiting Gjovik from talking about the witness intimidation, from gathering evidence of the continued intimidation.

46. Here, none of the abstention doctrines apply for legal and federalism policy reasons. The state of Washington intruded upon the powers of the federal court and agencies as well as the agencies of the state of California, through is highly Unconstitutional personal jurisdiction statute. The state of Washington allowed a Court of Limited Jurisdiction to create res judicata and Full Faith & Credit issues for ongoing federal cases and investigations. The U.S District Court will not be intruding upon state matters, it will be restoring the proper jurisdiction of these matters and ensuring the state of Washington does not further impede upon federal proceedings.

47. Well before the state matters were initiated, Gjovik cases already invoked federal jurisdiction. The federal court's determination of its own jurisdiction would preclude the state court from finding such jurisdiction lacking. *Montana v. United States*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979): If states can insulate their unconstitutional enactments from federal judicial review, then states like Washington can effectively disregard the rights protected by the

1    Federal Constitution, thus violating the Framers' dictate that *"[t]his Constitution ... shall be the*

2    *supreme Law of the Land,"* U.S. Const. art. VI.  Further, here the U.S. District court is implicitly

3    and explicitly authorized to act by numerous acts of U.S. Congress.

4        48. There are no sensitive matters of state social policy here. The state of Washington was

5    afforded a reasonable opportunity to pass on their statutes, to apply their law in Gjovik's case,

6    and in doing so they stripped Gjovik of many of her core federal Constitutional rights and

7    severely interfered with her ongoing federal litigation. Gjovik and her prior counsel made

8    numerous objections to the state court with concerns violations of the U.S. Constitution and

9    interference with federal statutes, but the court insisted on proceeding despite. The vague and

10   overbroad statutes at issue here are still ripe for Petitioner to weaponize in her continued fervent

11   attacks against Gjovik. *Railroad Commission v Pullman Co*, 312 U.S. 496 (1941).

## VI.   NO ADEQUATE REMEDY AT LAW

13       49. As of filing this Motion, Gjovik was been unable to obtain a new lawyer for her state

14   Superior Court appeal of the restraining order against her, following her prior counsel's sudden

15   withdrawal. Gjovik has contacted dozens of lawyers and firms, and even utilized the intake and

16   assistance of EFF, ACLU, and NLG to no avail. This matter is so unfortunately and inextricably

17   linked to Gjovik's ongoing, complex litigation against Apple Inc, the subject matter has become

18   prohibitory for obtaining legal assistance.

19       50. As of filing this Motion, Gjovik appears to be forced to draft her own brief for the

20   Superior Court appeal and provide service of it upon the Petitioner, in direct violation of the

21   restraining order against Gjovik. In order for Gjovik to appeal this case within the state court

22   system, Gjovik would be compelled to violate the Order against her and deliver proof of that

23   violation to the Petition who then could report her and trigger Gjovik's incarceration. Even for

24   Gjovik to withdraw the pending appeal, she would have to contact Petitioner, which would

1    violate the order. If Gjovik does nothing, she could face a default judgement or contempt of

2    court. The Order only allows for Gjovik to "*testify[] in administrative or judicial proceedings.*"

3    Both Black's definition and plain meaning of "testify" note "*to make a solemn declaration under*

4    *oath for the purpose of establishing a fact (as in a court).*"[7] This appears to exclude legal

5    complaints.

6         51. Even if Gjovik was able to obtain counsel in time, Gjovik would be forced to hire and

7    pay legal fees for an attorney get up to speed on Gjovik's numerous, complex cases against

8    Apple Inc. Gjovik would also violate the Order by talking to the lawyer about the matter.

9    Further, as part of any further participation in the state court process, Gjovik will be forced to

10   subject herself to more forced testimony about her federal matters, evaluation of her federal

11   charges and cases by a state judge without jurisdiction over the matters, and opening herself up

12   for more witness intimidation and tampering.  As long as these vague, overbroad, and

13   unconstitutional statutes are in place, Gjovik remains at direct risk of further retaliatory litigation

14   by the vexatious Petitioner.

15        52. Washington courts also requires a "preponderance of evidence" to prove harassment.

16   RCW 10.14.080(3), 7.105.225(1). The transcript shows the Judge did not note any specific

17   evidence reviewed or analyzed during the hearing. The Judge appeared to rely solely on hearsay.

18   (Exhibit C & E). This does not appear to be an anomaly as one of Washington's new statutes on

19   July 1 2022 codifies this approach saying "*the rules of evidence need not be applied*." RCW

20   7.105.200(8). If Gjovik's burden upon appeal is to argue to the Superior Court Judge that there

21   was no clear and convincing evidence of harassment, but by August the state also codified that

22   the "rules of evidence need not be applied," Gjovik has not hope for a fair appeal.

23   _____

24   [7] "Testify." Merriam-Webster.com Dictionary, Merriam-Webster, https://www.merriam-webster.com/dictionary/testify. Accessed 19 Jun. 2022.; "Testify" Black's Law Dictionary, 2nd Edition.

53. Gjovik requires the intervention of the federal courts and equitable remedies to re-establish status quo by enjoining unconstitutional actions by state officers, a remedy which is "deeply rooted in American jurisprudence." *Armstrong v Exceptional Child Ctr. Inc,* 575 U.S. 320, 327 (2015).  Modifications to Gjovik's Order and the hearing should be a positive for the state of Washington, as they are no longer assisting in alleged retaliation against a safety whistleblower.

## VII.  PUBLIC INTEREST

54. It is always in the public's interest to prevent the violation of the Constitution and of individuals' constitutional rights. *Melendres v. Arpaio*, 695 F3d 990, 1002 (9th Cir. 2012). "It would not be equitable or in the public's interest to allow the state to continue to violate the requirements of federal law." *Valle Del Sol Inc. v. Whiting,* 732 F.3d 1006, 1029 (9th Cir. 2013).

55.  In a motion for a preliminary injunction, a court may consider its interest in "efficient administration and judicial economy." Here, If the Order and state hearing are not enjoined, it is entirely possible the state will make the situation far worse and thus create even more issues for the federal courts and agencies to have to address. The public interest, as reflected in the principles of the First Amendment, is served by free expression on issues of public concern. *New York Times v. Sullivan*, 376 U.S. 254, 270 (1964) (emphasizing the importance of "uninhibited, robust, and wide-open" debate on public issues); *Texas v. Johnson*, 491 U.S. 397, 408-09 (1989)

56. This injunction would not bind or otherwise impact the ex parte Petitioner, other than Gjovik now being free to report Petitioner's unlawful activity to the government and collect evidence of Petitioner's witness intimidation, without fear of incarceration for doing so. Gjovik has no plan, intention, or desire to make any direct contact with Petitioner whatsoever. In fact, Petitioner has continued to be blocked from contacting Gjovik via any of Gjovik's accounts since September 2021, and Gjovik has no plans to alter that either. During the state hearing Gjovik

1  only requested nominal ($1.00) damages in her motions to dismiss, and similarly now asks for

2  nothing more than her freedom.

3  .

## VIII. PRAYER FOR RELIEF

5  57. For these reasons, and for reasons set forth more fully in the Complaint, Gjovik feels

6  she is deserving of emergency injunctive relief either permanently or temporarily pending final

7  action from the Court.

8  WHEREFORE, Plaintiffs respectfully request that the Court:

9  • A. Grant the proposed order or similar order, as the court deems appropriate.

10 • B. Issue this order without any hearing, or in the alternative, schedule an expedited

11 hearing on the emergency motion so relief may be granted before June 30 2022.

12 • C. Grant the relief as a permanent injunction, but if not, then grant as temporary.

13 • D. Grant any other relief as the Court deems just and necessary.

14

## IX. CERTIFICATE OF SERVICE & & DECLARATION OF MEET/CONFER

16 I hereby certify that on June 21, 2022, I did serve the above Motion for Preliminary

17 Injunction through the Court's ECF filing system pursuant to Fed. R. Civ. Proc. 5(b)(2)(E) to the

18 following counsel for all Defendants: the State of Washington, Governor Inslee, and Attorney

19 General Ferguson (as represented by Asst. Attorney General William McGinty).

20 I hereby declare and certify that Per Honorable Richard A. Jones "General Motions

21 Practice" that upon initial contact with the state of Washington on June 8, I informed the state of

22 Washington of my intent to request emergency injunctive relief and on June 16, the state of

23 Washington, per Mr. McGinty, confirmed he understood.  I sent a notice of timing for the motion

24 on June 19 2022 and sent an outline and draft of the motion as soon as I completed legal research

1  and drafting on June 20 2022. I asked Mr. McGinty to please discuss the matter during our

2  conference on June 21 2022 as I planned to submit shortly after. Gjovik submits the motion

3  following the conference with Mr. McGinty as he was not able to eliminate the need for this

4  request. (Attached: Meet and Confer)

5      This motion was attempted to be scheduled pursuant to Local Civil Rule 7(d), though

6  while it may qualify as a hybrid-TRO, Gjovik noted for end of week as to give the Court time to

7  review. Gjovik apologizes for any mistake or inconvenience.

8      Gjovik's NLRB affidavits can be submitted to the court under seal and per request.

9

10                                          Respectfully submitted,
                                            DATED: June 21, 2022
11

12                                          *Ashley Gjovik*

13

14                                          _____

15                                          ASHLEY M. GJOVIK
                                            *Pro Se*
16

17

18

19

20

21

22

23

24

## X.    PROPOSED ORDER GRANTING

## PLAINTIFF'S EMERGENCY PRELIMINARY INJUNCTION

After review, the Court hereby GRANTS Plaintiffs' Emergency Motion for Preliminary Injunction and ORDERS Defendants State of Washington to:

- Enjoin the state court proceedings (22-2-03849-7)

- Enjoin the order against Gjovik (22CIV01704KCX)

- Enjoin the state of Washington from censoring, limiting, or hindering Gjovik as a federal witness and informant against Apple Inc, by assistance to Petitioner or otherwise.

Ordered by,

Dated this ___ day of ___, 2022.

_____

UNITED STATES DISTRICT JUDGE

Presented by,

Dated this ___ day of June, 2022.

_____

Ashley M. Gjovik (*pro se*)