# UNITED STATES DISTRICT COURT

for the WESTERN DISTRICT of WASHINGTON at SEATTLE

|  |  |
|---|---|
| | CASE NO. 2:22-CV-00807-RAJ-BAT |
| *Ashley M. Gjovik* (*pro se*),<br><br>          Plaintiff(s),<br>   v.<br><br>*State of Washington, et al.*<br><br>          Defendant(s). | **MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**<br><br>NOTE ON MOTION CALENDAR: JULY 15 (4TH FRIDAY) |

## I.    INTRODUCTION

1. Gjovik introduces a motion for preliminary injunction against the state of

Washington's facially unconstitutional long-arm personal jurisdiction statute, the overbroad and

vague provisions of the anti-harassment statutes, and the attempted retirement of the clearly

much needed Constitutional savings section. Preliminary injunctions may grant intermediate

relief "of the same character as that which may be granted finally." Gjovik requests expedited

judicial intervention to several of the matters in her pleading, as well as the court's discretionary

injunctive power under All Writs Act to prevent disastrous, irreparable harm within the state

courts. (See Emergency Motion for Relief, Dkt #11). If part of the Emergency Motion is denied,

Gjovik incorporates her outstanding requests here.


## II.    MOTION FOR NON-EMERGENCY PRELIMINARY INJUNCTIVE RELIEF

2. Gjovik, pursuant to Rule 65 of the Federal Rules of Civil Procedure, and Local Rule

65, moves this Court for entry of a Preliminary Injunction enjoining the Defendant state of

Washington from enforcing the provision enumerated in the Proposed Order. This motion is

based on the following grounds:

- Violations of the U.S. Constitution 1st & 14th Amendment
- Violation of the U.S. Constitution Ex Post Facto & Bill of Attainder Clauses
- U.S. Constitutional Preemption

Gjovik files this motion for Emergency Injunctive Relief to enjoin:
- The vague and overbroad provisions of the anti-harassment statutes, RCW 7.105.010(35(a), 10.14.020, 7.105.010(5)(b), & 10.14.030
- The indirect and attenuated provisions of the jurisdiction long-arm statute, (RCW 7.105.080 & 10.14.155
- The new post-RO prior-restraint "motions" cause of action, RCW 7.105.310(1)(0)
- The planned retirement of the much needed Constitutional savings provision, RCW 10.14.190


3. This Motion is based on the Complaint and Appendix, Notice of Pendency and Appendix,

Emergency Motion for Injunction, and any such other evidence that the Court should hear in this

case. The Complaint and summons were properly served via FRCP Rule 4 and RCW 4.92.020,[1]

per the Attorney General's published instructions. This motion has been scheduled for 4th Friday

pursuant to Local Civil Rule 7(d).


### III.  LEGAL STANDARD

4. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed

on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that

the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v.*

*Natural Resources Defense Council, Inc*., 555 U.S. 7 (2008). A challenge to statutes with

"directed narrowly and specifically at expression or conduct commonly associated with

expression" receive a "relaxed standing inquiry." *City of Lakewood v. Plain Dealer Pub. Co.,*

486 U.S. 750, 760 (1988), *Canatella v. California*, 304 F.3d 843, 853 n.12 (9th Cir. 2002).

5. The Courts are more willing to hear facial challenges on 1st Amendment cases because,

"those who desire to engage in legally protected expression [] may refrain from doing so rather

than risk prosecution or undertake to have the law declared partially invalid []. When we allow

such challenges, we mostly say we're protecting the free speech interests of 'parties not before

the Court." *Canatella v. California*, 304 F.3d 843, 853 n.13 (9th Cir. 2002)

6.  The Courts intend to give a platform to the few who are brave enough to step forward

on behalf of the many others too fearful to fight back. *Canatella v. California*, 304 F.3d 843, 853

n.12 (9th Cir. 2002). In fighting to get relief from the extraordinary unusual harm the state of

Washington has subjected Gjovik to, she also intends to fight to reform the state of Washington's

---

[1] RCW 4.92.020: Service of summons and complaint in such actions shall be served in the manner prescribed by law upon the attorney general, or by leaving the summons and complaint in the office of the attorney general with an assistant attorney general.

1    statutes to ensure no one else is subject to these crushing and tyrannical laws due to simply

2    exercising their constitutionally protected rights.

3        7. Because Washington subjects Gjovik to the untenable choice between self-censorship

4    and risking criminal and civil liability, the laws impose irreparable harm, threaten the public

5    interest, and tip the balance of equities heavily in favor of granting a preliminary injunction

6    Gjovik has a strong likelihood of success on the merits because the challenged laws are

7    unconstitutional as content-based regulations of protected speech that are not narrowly tailored to

8    a compelling government interest. In addition, even assuming that a narrow band of speech

9    covered by the challenged laws is unprotected, these laws are fatally overbroad and

10   impermissibly vague. Thus, all four factors favor the grant of a preliminary injunction. See,

11   *Ranchers Cattleman Action Legal Fund United Stockgrowers of Am. v. United States Dept. of*

12   *Ag*., 415 F.3d 1078, 1092 (9th Cir. 2005) (citing *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d

13   1113, 1120 (9th Cir. 2005).

14

15              **IV.  GJOVIK'S IRREPARABLE HARM ABSENT RELIEF**

16       8. The Ninth Circuit makes clear that a showing of immediate irreparable harm is

17   essential for preliminary injunctive relief. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d

18   668, 674 (9th Cir. 1988), *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir.

19   2011).  It is "well established that the deprivation of constitutional rights unquestionably

20   constitutes irreparable injury," *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012).

21       9. Here, Gjovik was subject to content-based prior restraint, no-contact, no-surveillance

22   order and added to a criminal register but for her federal whistleblowing. The Petitioner

23   submitted in written and oral testimony that she was reporting Gjovik due to Gjovik's own

24   complaints against Petitioner. Petitioner wrote in her written statement to the state court, which

the Judge said she read before she granted the Order against Gjovik, that Petitioner thought Gjovik's "harassment' of Petitioner "appears to be in part for exercising [Petitioner's] own first amendment rights in expressing [Petitioner's] opinion that [Gjovik's] retaliatory discharge case would be hard to prove because of the bonafide fact that [Gjovik] had leaked private documents about unreleased intellectual property owned by Apple to the press." (e.g., Docket 11, #2 Exhibits, pg7). She added, "I took the time to apologize for exercising those first amendment rights, because it clearly hurt [Gjovik's] feelings, despite my right to say such things." *Id. (referencing her threatening email to Gjovik on Feb 5 2022).* (e.g., Dkt #1, Exhibit I).

10. Gjovik's harm is described in depth within the Complaint (e.g., Docket #1, generally), Emergency Motion for Injunction (e.g., Docket # 11, generally), and her Reply brief from state court (Exhibit B). Even the state of Washington agrees with the irreparable harm Gjovik faces due to statute so sweeping, she could easily be convicted based on fully protected conduct and speech protected by the U.S. Constitution. "The legislature recognizes that persons convicted and imprisoned for crimes they did not commit have been uniquely victimized." Those wrongly convicted suffer "tremendous injustice by being stripped of their lives and liberty." RCW 4.100.010

## V.   LIKELIHOOD OF SUCCESS ON THE MERITS

### i.   Standing

11. Gjovik is injured with an injury-in-fact: a concrete, particularized, actual, likely, and imminent injuries. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 558–59, (1992). Gjovik has a 'concrete plan' to violate the laws in question (continuing to pursue her whistleblower cases against Apple Inc), while the Petitioner has communicated specific warnings and threats to initiate further proceedings against her, and there is a history of past enforcement by Washington

1  under the challenged statute.[2]  *Many Cultures, One Message v. Clements*, 520 F. App'x 517, 519

2  (9th Cir. 2013). Based on the vexatious Petitioner's prior history of reporting Gjovik to law

3  enforcement, there's no reason to think she will not or has not already reported Gjovik for

4  somehow violating the Order. The injury is redressable by the Court through injunctive and

5  declaratory relief.

6        12. A controversy exists because the officials represent the state whose statute is being

7  challenged as the source of the injury." *Kentucky v. Graham*, 473 U.S. 159 (1985).  Suits against

8  governmental actors in their official capacity are treated as a suit against the governmental entity

9  itself. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The injury is fairly traceable to the state of

10  Washington. State of Washington has codified its liability for personal harm, saying "The state

11  of Washington, whether acting in its governmental or proprietary capacity, shall be liable for

12  damages arising out of its tortious conduct to the same extent as if it were a private person or

13  corporation." RCW 4.92.090. In actions and claims against the state of Washington, the state has

14  designated that the "attorney general or an assistant attorney general shall appear and act as

15  counsel for the state. The action shall proceed in all respects as other actions." RCW 4.92.030

16        13. An injury in fact is "an invasion of a legally protected interest which is (a) concrete and

17  particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lopez v. Candaele,*

18  630 F.3d 775, 785 (9th Cir. 2010). Because "[c]onstitutional challenges based on the First

19  Amendment present unique standing considerations," plaintiffs may establish an injury in fact

20  without first suffering a direct injury from the challenged restriction. *Lopez v. Candaele*, 630

21  F.3d 775, 785 (9th Cir. 2010). In an effort to avoid the chilling effect of sweeping restrictions,

22

23  ───────────────

[2] "Crime in Washington: 2020 Annual Report," notes 18,002 reports of violations of restraining orders with 8,526

24  arrests in just 2020, Washington Association of Sheriffs and Police Chiefs, Crime in Washington: 2020 Annual
Report, https://www.waspc.org/assets/CJIS/Crime%20In%20Washington%202020-small.pdf

the Supreme Court has endorsed what might be called a 'hold your tongue and challenge now' approach rather than requiring litigants to speak first and take their chances with the consequences. *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010); *Arizona Right to Life Pol. Action Comm. v. Bayless*, 320 F.3d 1002, 1006 (9th Cir. 2003). Here, the laws and actions by the state of Washington against Gjovik have actively chilled Gjovik as well as her friends and supporters, in addition to Gjovik's concrete injuries. One witness statement Gjovik submitted in the state hearing noted that Petitioner also harassed her and tried to silence her about the abuse, "effectively yelling at me while holding her hand over my mouth." That witness has since set their social media accounts to private in order to avoid further abuse from Petitioner. (Exhibit A).

14. Gjovik intends to continue to pursue her Apple Inc cases, including her allegations against Petitioner. Gjovik intends to continue supporting the labor activities at Apple Inc, with Apple's first U.S. union established this weekend.[3] Gjovik intends to continue talking the press and publishing updates on her Apple cases. Gjovik intends to fight this Order and the Washington statutes that created it. Meanwhile, Petitioner appears to be just as vexatious as ever, and Gjovik still worries every moment that any of these activities could result in additional orders, lawsuits, and her incarceration. (e.g, Docket #11, Emergency Motion).  Due to this fear, Gjovik's been chilled. She is grossly self-censoring until the Order can be removed. While Gjovik decided a month or two after the Order to start talking publicly about her Apple cases again, Gjovik still gives a large parameter to any topic that Petitioner might be able to argue is somehow connected to her, including certain labor organizing activities, such as "AppleToo" or even the NLRB-related details of the Order against Gjovik. This is the type of tyrannical censorship the 1st Amendment aims to prevent. *Babbitt v. Farm Workers*, 442 U.S. 289, 298

---

[3] *Apple workers at Maryland store vote to unionize, a first for the U.S.,* Reuters (June 19 2022), https://www.reuters.com/markets/us/apple-workers-maryland-store-vote-unionize-first-us-2022-06-19/

(1979), *Care Comm. v. Arneson*, 638 F.3d 621, 627 (8th Cir. 2011). "The rights of political

association are fragile enough without adding the additional threat of destruction by lawsuit."

*NAACP v. Claiborne Hardware Co.,* 458 U.S. 886 (1982).

15. Prudential considerations have weighed in favor of allowing litigants to bring First

Amendment challenges on behalf of those whose expression might be impermissibly chilled, so

long as the plaintiff also suffers an injury in fact. *Clark v. City of Lakewood*, 259 F.3d 996, 1010

(9th Cir. 2001), as amended (Aug. 15, 2001). "Even where a First Amendment challenge could

be brought by one actually engaged in protected activity, there is a possibility that, rather than

risk punishment for his conduct in challenging the statute, he will refrain from engaging further

in the protected activity. Society as a whole then would be the loser. Litigants, therefore, are

permitted to challenge a statute … because … the statute's very existence may cause others not

before the court to refrain from constitutionally protected speech or expression." *Sec'y of State v.

Joseph H. Munson Co*., 467 U.S. 947, 955 (1984); *Clark v. City of Lakewood,* 259 F.3d 996,

1010 (9th Cir. 2001), as amended (Aug. 15, 2001).

16. Abstention from the exercise of federal jurisdiction is the exception, not the rule, and

federal courts should not refuse to decide a case in deference to the States. *Hawaii Hous. Auth. v.

Midkiff,* 467 U.S. 229, 236 (1984); *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013)

(citing *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368

(1989); *Ex Parte Young*, 209 U.S. 123, 157 (1908). The state of Washington tried to invoke (via

brute force) concurrent jurisdiction on the federal matters, thus the federal government was

already present and would not be "abstaining." *Exxon Mobil Corp. V. Saudi Basic Industries

Corp*. (03-1696) 544 U.S. 280 (2005). One *Younger* exception provides, "federal intervention is

appropriate under this exception if the state courts are biased and unable to be trusted on a

particular issue." *Gibson v. Berryhill*, 411 U.S. 564 (1973).

17. Here, none of the abstention doctrines apply for legal and federalism policy reasons. The state of Washington intruded upon the powers of the federal court and agencies as well as the agencies of the state of California, through is highly unconstitutional personal jurisdiction statute. The state of Washington allowed a Court of Limited Jurisdiction to create res judicata and Full Faith & Credit issues for ongoing federal cases and investigations. The U.S District Court will not be intruding upon state matters, it will be restoring the proper jurisdiction of these matters and ensuring the state of Washington does not further impede upon federal proceedings.

18. The abstention doctrines do not, nor should not apply to this extraordinary matter. The proposition that no state may enact statutes in violation of the Federal Constitution is fundamental to our federal system. *Fletcher v. Peck*, 10 U.S. (6 Cranch) 87, 136 (1810). If states can insulate their unconstitutional enactments from federal judicial review, then states like Washington can effectively disregard the rights protected by the Federal Constitution, thus violating the Framers' dictate that *"[t]his Constitution ... shall be the supreme Law of the Land,"* U.S. Const. art. VI.

19. *Younger* is based on 28 U.S.C. § 2283 and prohibits injunctions to stay proceedings in a state court except as expressly authorized by Act of Congress. Here, the U.S. District court is implicitly and explicitly authorized to act by numerous acts of U.S. Congress.  At least for the Order against Gjovik, *Younger* would not apply even if it could, as the Order is "flagrantly and patently unconstitutional."  *Younger* also does not apply here, similarly to *Rynearson v Ferguson,* 903 F.3d 920 (9th Cir. 2018), as the conduct Gjovik was found liable for was not prescribed in the statute and the Order prohibited actions which are not harassment, per soon to be retired Constitutional savings clause.

20. *Younger* also does not apply because the petition was made in made faith and to harass, and under patently unconstitutional statutes. If the state prosecution was brought in bad faith and

1    used to harass the criminal defendant, the Court stated that injunctive relief would be available.

2    *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

3    21. Here, the *Pullman* abstention doctrine does not apply. *Railroad Commission v Pullman

4    Co*, 312 U.S. 496 (1941).   There are no sensitive matters of state social policy here. The state of

5    Washington was afforded a reasonable opportunity to pass on their statutes, to apply their law in

6    Gjovik's case, and in doing so they stripped Gjovik of many of her core federal Constitutional

7    rights and severely interfered with her ongoing federal litigation. Gjovik and her prior counsel

8    made numerous objections to the state court with concerns violations of the U.S. Constitution

9    and interference with federal statutes, but the court insisted on proceeding despite. Further, even

10   if the Superior Court removes the Order, the statutes at issue here are still ripe for Petitioner to

11   weaponize in her continued fervent attacks against Gjovik.

12   22. The *Rooker–Feldman doctrine* is a doctrine of civil procedure enunciated by the

13   United States Supreme Court in two cases, *Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923) and

14   *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine holds that

15   lower United States federal courts—i.e., federal courts other than the Supreme Court—should

16   not sit in direct review of state court decisions unless Congress has specifically authorized such

17   relief. *Lance v. Dennis*, 546 U.S. 459 (2006). Rooker-Feldman does not apply because Gjovik

18   does not only allege a harm by the state of Washington, she also alleges a harm by the adverse

19   party (Petitioner) in federal matters. *Noel Hall, Kougasian v. TMSL*, 359 F.3d 1136 (9th Cir.

20   2004).

21   23. Well before the state matters were initiated, Gjovik's cases already invoked federal

22   jurisdiction. The federal court's determination of its own jurisdiction would preclude the state

23   court from finding such jurisdiction lacking. *Montana v. United States*, 440 U.S. 147, 99 S.Ct.

24   970, 59 L.Ed.2d 210 (1979). These federal statutes (NLRA, SOX, CERCLA, etc) provided the

1   express Congressional authority required for standing and injunction, as described. (e.g., Dkt

2   #11).

3       24. Sovereign immunity is not a jurisdictional bar as to the Attorney General. *Planned*

4   *Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 920 (9th Cir. 2004) (holding that the Idaho

5   Attorney General was properly named under *Ex Parte Young* because, unless the county

6   prosecutor objected, the Attorney General had power to perform every act the county attorney

7   could perform); *Bolbol v. Brown,* 120 F. Supp. 3d 1010, 1018–19 (N.D. Cal. 2015) (holding that

8   the California Attorney General was not entitled to Eleventh Amendment immunity because

9   under the state constitution the Attorney General not only has "direct supervision over every

10  district attorney" but also has the duty to "prosecute any violations of the law ... [and] shall have

11  all the powers of a district attorney).

12

13      **ii.      Statutes allow Orders based on Constitutionally Protected Expression**

14      25. Laws (like this Order & these provisions) are "properly subject to facial attack" because

15  they impose direct restrictions on protected First Amendment activity with imprecise means

16  which lead to an unnecessary risk of chilling free speech. *Sec'y of State of Md. v. Joseph H.*

17  *Munson Co.*, 467 U.S. 947, 968 (1984). The laws at issue here are clearly facially overbroad and

18  vague.

19      26. Even speech that is harassing is not exempt from constitutional protections. *Catlett v.*

20  *Teel,* 15 Wn. App. 2d 689, 704, 477 P.3d 50 (2020). *Hedine v. Guerrero*, 17 Wash. App. 2d 1050

21  (2021). The First Amendment dictates that "Congress shall make no law . . . abridging the

22  freedom of speech." "[A] law imposing criminal penalties on protected speech is a stark example

23  of speech suppression." *Ashcroft v. Free Speech Coal*., 535 U.S. 234, 244 (2002) *U.S. v. Evelyn*

24  *Sineneng-Smith*, 910 F.3d 461 (9th Cir. 2018).

1      27. The Order against Gjovik was mostly based on one of Gjovik's legal memos for her

2 federal cases. The Judge's decision explained, *"[Petitioner] may have posted information… on*

3 *her own Twitter feed, [but Gjvovik's] reposting of them and the method that was used ….*

4 *copying it, putting it in a PDF, and then reposting it in another medium in [Gjovik's] own*

5 *website*." (e.g., Dkt #1, at pg. 35, lines 18-20; 3/15 Hearing transcript pg 46). Gjovik's legal

6 memo to the federal government providing evidence of witness intimidation by Petitioner was

7 used by a state court to justify a content-based prior restraint gag order and to put Gjovik on a

8 criminal registry.

9      28. When Gjovik posted a cease and desist to Apple Inc in January 2022, she noted

10 Petitioners name among others as parties she requested Apple to stop attacking her. Petitioner

11 raised that as harassment. (e.g., Dkt #11, #2 Appendix, Exhibit E, pg 25) The state Judge at the

12 hearing pointed to Gjovik's "Cease and Desist" notice to Apple Inc, and found "*posting this kind*

13 *of information about somebody's….name change, none of that serves any lawful purpose*." (e.g.,

14 Dkt #1, page 48, lines 8-19, 3/15 hearing transcript). It's unclear if the Judge would have still

15 ruled this way if she required evidence to be provided for the numerous allegations against

16 Gjovik, but Washington does not require rules of evidence, or evidence at all, apparently.

17      29. Washington's harassment statutes are not tailored to only be triggered by direct

18 contact from a Respondent to Petitioner, they apply to any communication and speech made by

19 Respondent via any platform that a Judge could construe as "at." Therefore, the statutes

20 implicate some of the most protected speech, including internet communications, news reporting,

21 and publishing public records. *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017);

22 *Reno v. ACLU,* 521 U.S. 844 (1997).

23

24

**RCW 7.105.010 (35)(a), RCW 10.14.020 (2):**
"A knowing and willful course of conduct directed [*Unlawful* at] a specific person which seriously [*Unlawful*: alarms, annoys,] harasses, [*Unlawful*: or is detrimental]] to such person, and which serves no [*Unlawful*: legitimate or] lawful purpose."

30. The U.S. Constitution and Washington Supreme Court protect content which "annoys" or "alarms," thus no doubt also protects speech that is "detrimental." In 1989, The Washington Supreme Court wrote: "proscriptions of conduct or speech which 'annoy' or 'alarm' others have been found to be unconstitutionally vague." *Coates v. Cincinnati*, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971); *Everett v. Moore*, 37 Wash.App. 862, 683 P.2d 617 (1984); *State v. Blair*, 287 Or. 519, 601 P.2d 766 (1979). *City of Seattle v. Huff*, 111 Wash. 2d 923, 929–30, 767 P.2d 572, 576 (1989). Indeed, in 1971, the U.S Supreme Court found an ordinance prohibiting "annoying" unconstitutionally vague. *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971). The court wrote, "conduct that annoys some people does not annoy others." *Id*. In Gjovik's home state, the Supreme Court of Oregon also struck down provisions in their own harassment law, finding conduct "likely to cause annoyance or alarm" was unconstitutionally vague. *State v. Blair*, 287 Or. 519, 601 P.2d 766 (1979).

**RCW 7.105.010 (5)(b), RCW 10.14.030**
(5)(b) In determining whether the course of conduct serves any [*Unlawful*: legitimate or] lawful purpose, a court should consider whether:
(iii) The respondent's course of conduct appears designed to [*Unlawful*: alarm, annoy, or] harass the petitioner;
(v) The respondent's course of conduct has the purpose [*Unlawful*: or effect] of unreasonably interfering with the petitioner's privacy or the purpose [*Unlawful*: or effect] of creating an intimidating, hostile, or offensive living environment for the petitioner;

31. Speech which is designed to alarm, annoy, or harass is protected speech and a restraint of that speech is content (and even viewpoint) based prior restraint, is unconstitutionally

1   overbroad, and cannot survive strict scrutiny analysis. *State v. Bishop*, 787 S.E.2d 814 (N.C.

2   2016); *People v. Marquan M.*, 19 N.E.3d 480 (N.Y. 2014); *KKK v. City of Erie*, 99 F. Supp. 2d

3   583, 591-92 (W.D. Pa. 2000); *Reno v. ACLU*, 521 U.S. 844, 874 (1997); *Boos v. Barry*, 485 U.S.

4   312, 322 (1988). Even worse is speech which simply could have the "effect" of causing a certain

5   outcome. *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 55 (1988). As, the state of Washington

6   currently endorses.

7       32. Speech which lacks "a legitimate purpose" has also already been found to be

8   unconstitutionally vague, as that is a highly subjective standard. *City of Bellevue v. Lorang*, 140

9   Wn.2d 19, 992 P.2d 496 (2000) (En Banc), decision about vagueness based on *Grayned v. City*

10  *of Rockford*, 408 U.S. 104, 108–09 (1972).

11      33. A new statute, effective July 1 2021, that will allow for new prior-restraint "motions"

12  is also terribly unconstitutional for a number of reasons. Instead of initiating a formal complaint

13  for these causes of action after the conduct occurs, the state of Washington courts will now allow

14  Petitioners to submit a "motion" requesting a respondent/defendant to be deprived of their rights

15  to access courts and deprive them of their constitutional right to free speech.

16      RCW 7.105.310(1) In issuing any type of protection order, other than an extreme
        risk protection order, the court shall have broad discretion to grant such relief as the
17      court deems proper, including an order that provides relief as follows:
18      (o) Enter an order restricting the respondent from engaging in abusive litigation as
        set forth in chapter 26.51 RCW [Abusive Litigation – Domestic Violence]
19      [*Unlawful*: or in frivolous filings against the petitioner, making harassing or libelous
        communications about the petitioner to third parties, or making false reports to
20      investigative agencies.] A petitioner may request this relief in the petition or by
        separate motion. [*Unlawful*: A petitioner may request this relief by separate motion
21      at any time within five years of the date the protection order is entered even if the
        order has since expired.]
22

23

24

MOTION FOR PRELIM. INJ.                                    PO BOX 119 SANTA CLARA, CA 95050
CASE NO. 2:22-CV-00807-RAJ-BAT                                          (408) 883-4428
                                    - 14 -

34. The state of Washington is about to allow any petitioner who obtained an Order in the last five years, even if it was based on protected activity and jurisdiction was asserted through indirect and attenuated contacts, to now simply file a motion asking for further punishment against the Respondent. There is no published civil procedure for these motions, or what the showing must be for a motion to be granted. The state of Washington is soon to codify that: "*the rules of evidence need not be applied*." RCW 7.105.200(8). Further, terms like "frivolous filings" or "libelous communications" are not defined either. These new "motions" are ripe for abuse and must be nipped in the bud quickly. The state of Washington is about to create a new cause of action that codifies prior restraint, lack of due process, and rampant violations of the right to Freedom of Expression.

### iii.    Long Arm Statute is Clearly Unconstitutional

35. Washington's long-arm statute is also facially unconstitutional. A court may only exercise specific personal jurisdiction over individuals with enough contacts within the state where the court is located so that the lawsuit does not offend the due process standard of "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. state of Washington*, 326 U.S. 310, 316 (1945). Simply, "minimum contacts" require purposeful contacts by the defendant with the forum state itself, not the defendant's contacts with persons who reside there. *Walden v. Fiore, 571* U.S. 277, 285 (2014); *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011).

36. Due process prohibits jurisdiction based on "random, fortuitous, or attenuated" contacts. *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985); *Walden v. Fiore,* 571 U.S. 277, 286 (2014).  Without a purposeful affiliation with the state, no specific jurisdiction can exist. *Bristol-Myers Squibb Co. v. Superior Court of Cal*., 137 S. Ct. 1773, 1781 (2017). Just as the Supreme

Court had to strike down the state of California's "loose and spurious" view of personal jurisdiction in 2017, now it is time for the state of Washington to face review and reform.

37. Here, the following provisions of RCW 10.14.155 (effective until July 1 2022), and RCW 7.105.080 (effective July 1 2022) are facial violations of the constitutional requirements for due process:

- (1)(c) The act or acts of the individual or the individual's agent giving rise to the petition or enforcement of a protection order occurred within this state;
- (1)(d)(i) The act or acts of the individual or the individual's agent giving rise to the petition or enforcement of a protection order occurred outside this state and are part of an ongoing pattern that has an adverse effect on the petitioner or a member of the petitioner's family or household and the petitioner resides in this state;
- (2) For jurisdiction to be exercised under subsection (1)(d) of this section, the individual must have communicated with the petitioner or a member of the petitioner's family, directly [*Unlawful*: or indirectly], or made known a threat to the safety of the petitioner or member of the petitioner's family, while the petitioner or member of the petitioner's family resides in this state.
- (3) For the purposes of this section:(a) "Communicated" or "made known" includes the following means: In person, [*Unlawful*: through publication], by mail, telephonically, through an electronic communication site or medium, by text, or through other social media. [*Unlawful*: Communication on any electronic medium that is generally available to any individual residing in the state is sufficient to exercise jurisdiction under subsection (1)(d) of this section. (3)(b) An act or acts that "occurred within this state" include an oral or written statement made or published by a person outside of this state to any person in this state by means included in (a) of this subsection, or by means of interstate commerce or foreign commerce.]

38. Perhaps the opposite of "purposeful contacts directed to a forum state" is **"indirect publications on any electronic medium that is generally available to any individual residing in the state."** If these "loose and spurious" provisions with "random, fortuitous, and attenuated" contacts are enjoined, Gjovik should no longer have fear having to fight the jurisdiction of additional arbitrary Petitions against her and instead can move to dismiss due to lack of personal jurisdiction. With apparently over ten thousand of these restraining orders issues each year, the

1   current statute is a threat to the entire United States and beyond. [4] Indeed, with the apparent

2   global reach of the state of Washington's harassment statutes, substantively and procedurally,

3   this matter may even implicate foreign affairs concerns.

4

5                           **VI.   BALANCE OF HARDSHIPS**

6          39. While Washington may have legitimate state interests in allowing for restraining

7   orders against harassment, the interest is not compelling as the cause of action overlaps with

8   numerous existing actions and where it does not, it is likely unconstitutional. That is because

9   these laws are not narrowly tailored. Instead, they are sprawling. The output of the Orders is just

10  as unlawful as the statutes that provide the hearing for that Order. By granting a free-form text

11  box for Judges to fill out (Bill of Attainder) in addition to the legislatively defined check-boxes,

12  the state Judges are welcomed to injunct expression, not contact (which is covered already in the

13  form).  Proposals for reform from Andrew H. Caplan in a 2013 law review article include

14  ensuring the statutes and process aim injunctions at contact not content, impose reasonable

15  limiting and clarifying construction, consider Anti-SLAPP, and look for "red flag" fact patterns

16  for protected speech.  Free Speech and Civil Harassment Orders, 64 Hastings L.J. 781 (April

17  2013)

18         40. A restraining order that prohibits content-based speech, like the one against Gjovik

19  and which have previously been granted in the state of Washington,[5] are "injunctions [that]

20  violate the First Amendment, which generally protects the right to criticize people, including

21

22  _____

    [4] "Crime in Washington: 2020 Annual Report," notes 18,002 reports of violations of restraining orders with 8,526
23  arrests in just 2020, Washington Association of Sheriffs and Police Chiefs, Crime in Washington: 2020 Annual
    Report, https://www.waspc.org/assets/CJIS/Crime%20In%20Washington%202020-small.pdf

24  [5] See, *In re Marriage of Suggs*, 93 P.3d 161 (Wash. 2004*); In re Marriage of Meredith,* 201 P.3d 1056, 1062 (Wash.
    Ct. App. 2009); *Catlett v. Teel*, 477 P.3d 50 (Wash. Ct. App. 2020), etc.

private figures. False, defamatory statements of fact about people can lead to liability, and might even be enjoinable. But that can't justify bans (broad or narrow) on future speech about a person that would cover protected opinion and protected factually accurate allegations, and not just false factual assertions." Eugene Volokh, *Overbroad Injunctions Against Speech (Especially In Libel And Harassment Cases)*, Harvard Journal of Law & Public Policy, Vol. 45, Issue 1, pg 170-171 (Winter 2022). In his article, Volokh examines hundreds of facially unconstitutionally restraining orders issues across the country. *Id* at 226-256. The issue is endemic and Washington has some of the most broad laws.

## VII.  NO ADEQUATE REMEDY AT LAW

41. As for the Order against Gjovik and the hearing, see the Emergency Motion for Relief from the "Kafkaesque nightmare" the state of Washington's unlawful statutes has forced her into. (e.g., Docket # 11).

42. Gjovik requires the intervention of the federal courts and equitable remedies to re-establish status quo by enjoining unconstitutional actions by state officers, a remedy which is "deeply rooted in American jurisprudence." *Armstrong v Exceptional Child Ctr. Inc,* 575 U.S. 320, 327 (2015).  Due to the vexatious Petitioner who sued Gjovik in state court, who Gjovik has already formally complained to the federal government of witness intimidation about, Gjovik expects to face further retaliatory and threatening litigation from the Petitioner as long as the state laws invite and enable it. The state courts clearly cannot be trusted to uphold the U.S. Constitution as a discretionary matter, and the state Attorney General & legislature cannot be trusted to instruct the courts to uphold the U.S. Constitution as they're even retiring their Constitutional savings provision.

43. Washington might complain about having some of their statutory provisions found unlawful. However, Washington works to pass better laws, they still have their criminal harassment statutes, their domestic violence statutes, and plenty of others.

## VIII. PUBLIC INTEREST

44. It is always in the public's interest to prevent the violation of the U.S. Constitution and of individuals' constitutional rights. *Melendres v. Arpaio*, 695 F3d 990, 1002 (9th Cir. 2012). "It would not be equitable or in the public's interest to allow the state to continue to violate the requirements of federal law." *Valle Del Sol Inc. v. Whiting,* 732 F.3d 1006, 1029 (9th Cir. 2013). Here, in addition to all of the unconstitutional laws, facially and applied, the state of Washington also has the audacity to retire its Constitutional Savings Provision, RCW 10.14.190:

> **Constitutional rights. (Effective until July 1, 2022.)**
> Nothing in this chapter shall be construed to infringe upon any constitutionally protected rights including, but not limited to, freedom of speech and freedom of assembly.

45.  In a motion for a preliminary injunction, a court may consider its interest in "efficient administration and judicial economy." Here, if the Order and state hearing are not enjoined, if these facially bad laws stay active, it is entirely possible the state will make Gjovik's situation far worse and thus create even more issues for the federal courts and agencies to have to address. If these overbroad, vague statutes are not restrained, it's likely more people will, and are being, harmed. While preliminary injunctions are rare and for extraordinary situations, the use here would be in support of judicial economy.

46. The public interest favors an injunction, as reflected in the principles of the First Amendment, is served by free expression on issues of public concern. *New York Times v.*

1  *Sullivan*, 376 U.S. 254, 270 (1964) (emphasizing the importance of "uninhibited, robust, and

2  wide-open" debate on public issues); *Texas v. Johnson*, 491 U.S. 397, 408-09 (1989) (noting that

3  the First Amendment best "serve[s] its high purpose when it induces a condition of unrest,

4  creates dissatisfaction with conditions as they are, or even stirs people to anger []").

## IX.   PRAYER FOR RELIEF

7  47. For these reasons, and for reasons set forth more fully in the Complaint, Gjovik feels

8  she is deserving of preliminary injunctive relief pending final, lawful action from the Court.

9  WHEREFORE, Plaintiffs respectfully request that the Court:

10  A. Grant the proposed orders or similar orders, as the court deems appropriate.

11  B. Issue these orders without any hearing, or schedule an expedited hearing.

12  C. Grant any other relief as the Court deems just and necessary.

14  Gjovik respectfully submits that these requests are related to arguments she plans make

15  before Your Honor.

## X.   CERTIFICATE OF SERVICE & DECLARATION OF MEET/CONFER

18  I hereby certify that on June 21, 2022, I did serve the above Motion for Preliminary

19  Injunction through the Court's ECF filing system pursuant to Fed. R. Civ. Proc. 5(b)(2)(E) to the

20  following counsel for all Defendants: the State of Washington, Governor Inslee, and Attorney

21  General Ferguson as represented by Asst. Attorney General William McGinty.

22  I hereby declare and certify that per Honorable Richard A. Jones "General Motions

23  Practice" that upon initial contact with the state of Washington on June 9, I informed them of my

24  intent to request emergency injunctive relief on June 16, the state of Washington, per Mr.

McGinty, confirmed they understood. I sent an outline of the motion as soon as I completed legal

research and drafting on June 19 2022 and asked McGinty to please discuss the matter during our

conference on June 21 2022. Gjovik submits the motion, along with the Emergency Motion,

following the conference with Mr. McGinty as he was not able to eliminate the need for this

request.  (e.g., Dkt # 11, #3 Meet & Confer).

Respectfully submitted,

DATED: June 21, 2022

*Ashley Gjovik*

_____

ASHLEY M. GJOVIK

*Pro Se*

## XI.   PROPOSED ORDER GRANTING

## PLAINTIFF'S EMERGENCY PRELIMINARY INJUNCTION

After review, the Court hereby GRANTS Plaintiffs' Emergency Motion for Preliminary Injunction and ORDERS Defendants State of Washington to:

- Enjoin RCW 7.105.010(35(a) & 10.14.020: "to alarm" and "to annoy" and "or is detrimental" and "legitimate or"

- Enjoin RCW 7.105.010(5)(b) & 10.14.030 "legitimate or"

- Enjoin RCW 7.105.080 & 10.14.155 "or indirectly" and "through publication" and "Communication on any electronic medium that is generally available to any individual residing in the state is sufficient to exercise jurisdiction under subsection (1)(d) of this section. (3)(b) An act or acts that "occurred within this state" include an oral or written statement made or published by a person outside of this state to any person in this state by means included in (a) of this subsection, or by means of interstate commerce or foreign commerce."

- Enjoin RCW 7.105.310(1)(0): "or in frivolous filings against the petitioner, making harassing or libelous communications about the petitioner to third parties, or making false reports to investigative agencies" and "a petitioner may request this relief by separate motion at any time within five years of the date the protection order is entered even if the order has since expired."

- Mandate, RCW 10.14.190, the Constitutional Savings Provision continue in force

Ordered by,

PO BOX 119 SANTA CLARA, CA 95050
(408) 883-4428

Dated this ___ day of ___, 2022.


_____

UNITED STATES DISTRICT JUDGE




Presented by,

Dated this ___ day of June, 2022.


_____

Ashley M. Gjovik (*pro se*)