**Honorable Judge Richard A. Jones**

# UNITED STATES DISTRICT COURT

for the WESTERN DISTRICT of WASHINGTON at SEATTLE

*Ashley M. Gjovik* (*pro se*),

                      Plaintiff(s),

   v.

*State of Washington, et al.*

                      Defendant(s).

CASE NO. 2:22-CV-00807-RAJ-BAT

**EMERGENCY MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

NOTE ON MOTION CALENDAR: JUNE 24 (1ST FRIDAY)

*Emergency Relief Required Before Direct Risk of Incarceration on June 30 2022*

### I.   INTRODUCTION

1. This is a reply to the state of Washington's response to Gjovik's *Motion for Emergency Injunctive Relief*. Gjovik also restates all of her previous filings herewith.

2. Gjovik generally disagrees with the legal arguments and some factual but non-material statements put forward by the state of Washington (including Attorney General Ferguson and Governor Inslee) in Dkt #14 *Response To Plaintiff's Emergency Motion For Injunctive Relief*,

REPLY TO RESP FOR MTN FOR EMR. INJ.                        ASHLEY M. GJOVIK
CASE NO. 2:22-CV-00807-RAJ-BAT                 PO BOX 119 SANTA CLARA, CA 95050
- 1 -                                    (408) 883-4428

however Gjovik will not reply to each argument or statement out of respect of the court's time. Instead, please note Gjovik does not imply agreement by silence.

3. Gjovik will also not list each defendant in each response. Here, as well as her other filings, accusations against the "state of Washington" should be inferred to include the state of Washington, as well as Attorney General Ferguson and Governor Inslee (in their official capacities). As Gjovik's motions and filings state, the defendant is "state of Washington, et. al." (re: Page 8, ¶ 2, Page 9 ¶1, etc).

4. The state of Washington fails to properly number its paragraphs in its *Response*, so Gjovik responds by page number and by paragraph, with the start of each paragraph linked to the page number for that content. Thus, if a paragraph starts on page 1 but overflows to page 2, Gjovik will note the paragraph as it is ordered on page 1.

5. As for the state of Washington's arguments about the 11th amendment and related doctrines, and the Constitutional challenges, please see Gjovik's *Motions* & *Complaint* for relevant precedent as to the case, the order, and the facial and as applied attack on the statutes.

## II. REPLY TO RESPONSE BY STATE OF WASHINGTON

6. Page 2, ¶ 3: This is indeed the name of the Petitioner, but Gjovik was explicitly forbidden by the state of Washington to "state" her "name(s)" on any "medium."[1]

7. Page 3, ¶ 2: Gjovik complained to the federal government about Apple Inc's unlawful conduct <u>before</u> she was fired. In the case of the U.S. EPA – she complained about unsafe work conditions five months before her termination. Gjovik has open charges and cases with the U.S. NLRB, U.S. SEC, U.S. Dept. of Justice, the U.S. Dept. of Labor (administering SOX, CERCLA, & OSHA whistleblower retaliation statutes), and the state of California Dept. of Labor. Gjovik

---

[1] [*REDACTED*] *v. Ashley Marie Gjovik*, Order for Protection – Harassment, King County District Court, case no. 22CIV01704KCX (1 March 2022).

did not list the U.S. EEOC or the California Dept. of Fair Empl. & Housing in her *Notice of Pendency of Other Actions* and is unsure why they are listed in the *Response*. (e.g., Dkt #10).

8. Page 3, ¶ 3: The "Legal Memo" was submitted to the federal government as a group of four memos (documented evidence, legal analysis, animus/conspiracy, and visual evidence). The Petition was based on the documented evidence report. Gjovik has now introduced all of these documents into Docket #15. The full evidence report is Doc #9 within that Docket (327 pages).

9. Page 4, ¶ 2: Note, Gjovik filed a grievance with the Washington Bar against her counsel from the March 1 hearing for testifying against her, not pushing her motions, not warning her she would have to testify or preparing her to testify, not arguing whistleblower retaliation, not impeaching the Petitioner's testimony, not referencing or impeaching the evidence, not informing her of communications Gjovik's lawyer had with Petitioner about Gjovik including Petitioner offering to withdraw the Petition before the March 1 hearing, quitting unexpectedly, and more. (Washington Bar Confirmation No. 202206120003; Filed June 12 2022).

10. Page 5, ¶ 3. Gjovik's disputes the state of Washington's statutory interpretation. Merriam-Webster defines "**statements**" as "something stated" and stated as "declared."[2] The term "**other publications**" is listed in a disjunctive list with "**or**" therefore it does not imply only statements that are publications, and if it did, that would be redundant (see, Rule Against Surplusage). While "**posts**" implies publications, "**statements**" does not. Gjovik reads the Order as "*Respondent shall not make any statements(,) or posts or other publications…*" The term "**medium**" is defined as "a means of effecting or conveying something."[3] Further, the Order excludes "**testimony**," defined as "*a solemn declaration usually made orally by a witness under*

---

[2] https://www.merriam-webster.com/dictionary/statement

[3] https://www.merriam-webster.com/dictionary/medium

*oath in response to interrogation by a lawyer or authorized public official."*[4] Under Expressio Unius Est Exclusio Alterius, the express mention of one thing (such as testimony), implies the exclusion of all others.[5] Further, this exclusion establishes "**statements**" as including non-publications, as otherwise there is no need to exclude testimony, which is not a publication (see: Noscitur a Sociis; Rule Against Surplusage; Whole Text[6]). Therefore, under statutory analysis, **the Order prohibits Gjovik from making "statements" on any "medium" about Petitioner with the sole exception of sworn "testimony."**

11. Page 5, ¶ 1; Page 10, ¶ 1, Page 15, ¶ 4; Page 16, ¶ 1: In the NLRB email the state of Washington cites, the Asst. General Counsel states she only has jurisdiction over Gjovik's claims against Apple Inc (which include allegations against Petitioner, but as an agent of Apple Inc) but that the NLRB does not have any jurisdiction over disputes between Petitioner against Gjovik directly. Indeed, the NLRB does not have jurisdiction to review a charge filed by Petitioner against Gjovik (who is not an employer engaged in interstate commerce, employing Petitioner), and vice versa. The NLRA pre-empts a retaliatory lawsuit filed against a federal informant, filed admittedly but for that witness's NLRB charge and allegations of unlawful conduct to the federal government against corporation and its agents. Further, law takes precedent over emails.

12. Page 7 ¶ 2: The state of Washington fails to acknowledge *Winter* is not required for preemption or for 18 USC 1514 injunctions. Gjovik does believe she met *Winters* factors however. State of Washington also argues *Younger, Rooker*, and Anti-Injunction Act even though they are also irrelevant under preemption.

---

[4] https://www.merriam-webster.com/dictionary/testimony

[5] https://definitions.uslegal.com/e/expressio-unius-est-exclusio-alterius/

[6] CRS, *Statutory Interpretation: Theories, Tools, and Trends*, https://crsreports.congress.gov/product/pdf/R/R45153

13. Page 10, ¶ 1: state of Washington argues, "*Ms. Gjovik makes much of the fact that her Legal Memo which was published on the Internet and not shared exclusively with the NLRB… But she ignores, again, materials attached to her own complaint.*" Gjovik did not ignore materials and is offended by the accusation. Gjovik focused her legal analysis on the alleged conduct that the Judge based her ruling on, ignoring the dozens of other unsubstantiated allegations by Petitioner against Gjovik which the judge did not entertain. As noted in the Complaint (e.g., Dkt #1 at pg 36) as well as in the uploaded trial transcript (e.g., Dkt #15), the Judge said in her ruling, *"[Petitioner] may have posted information, for instance, about her own medical conditions on her own Twitter feed, the reposting of them and the method that was used -- not really a retweet because she was blocked, but rather copying it, putting it in a PDF, and then reposting it in another medium in her own website.*" (e.g., Dkt #1 at pg 35). The Judge is referring to the Legal Memo for her decision. Petitioner also testified, "*These are not government websites that are hosting these, these are things that Ashley -- that Ms. Gjovik is writing herself and publishing herself that she is claiming are related to these federal charges.*" (e.g., Dkt #1, pg 33). The Judge ruled, "*"Posting this kind of information about somebody's medical condition, about someone's spouse's criminal history -- particularly when it's sealed, but even if it weren't sealed -- about someone's parents, about someone's name change, none of that serves any lawful purpose to disseminate."* (e.g., Dkt #1, pg 36). As discussed in the Complaint, Gjovik disputes all of these allegations of harassment, but nowhere in the Judge's ruling are any mention of "extortion" or "stoking followers to harass" (whatever that means). Further, both Gjovik and Petitioner confirmed the information in dispute (regardless of its mischaracterization by Petitioner) had been removed from Twitter and was only available in the evidence report "Legal Memo." (e.g., Dkt #1 at pg 23, 32, 59). The Judge referred directly to Gjovik's legal complaint – not Twitter, not extortion, not "stoking followers." The Judge granted the order based on

1  Gjovik's federal legal filings and based on admittedly already public information, included a
2  deleted photo of a cat.

3  14. Page 11, ¶ 1: The state of Washington cites *Olson Farms, Inc. v. Barbosa,* as
4  instructive, however that case was dismissed because there was "no evidence that the [state
5  agency] will assert jurisdiction" and the [state agency] said it "unhesitatingly acknowledges that
6  it may not act in a manner which interferes with the NLRB's assertion of jurisdiction and it has
7  no intention to do so." 134 F.3d 933, 938 (9th Cir. 1998). Here, on the contrary, the state of
8  Washington happily intrudes into NLRA & other federal jurisdiction without remorse. The injury
9  in *Olson* was described as "speculative, conjectural and hypothetical" and the court found the
10 issue was not "ripe." It is not instructive here. *Id.* In 2003, the 9th Circuit distinguished *Olson*
11 saying, "*Olson* sought to have the district court ... review the past jurisdictional decisions of the
12 [state agency] and the state courts," *Noel v. Hall,* 341 F.3d 1148, 1161 (9th Cir. 2003). Gjovik
13 does not seek to review the decisions of a state agency tasked with labor matters. Further, in
14 2016 the 9th Circuit further distinguished saying, the holding from *Olson* was "that the *Rooker–*
15 *Feldman doctrine* barred suit where the alleged injury was a state court's incorrect jurisdictional
16 determination." *Black v. Haselton*, 663 F. App'x 573, 575 (9th Cir. 2016). Here, Gjovik's injuries
17 are far beyond a jurisdictional determination.

18  15. Page 12 ¶ 1: Despite the section of 18 USC 1514 the state of Washington cites,
19 Gjovik did not ask for a temporary restraining order against Petitioner or against Defendants
20 under 1514(a)(1). Further, Protective Orders can be initiated by a district court, not a U.S.
21 Attorney, per 18 USC 1514(a)(1). However, Gjovik did not ask for a formal decision of witness
22 intimidation against Petitioner, instead Gjovik asked for injunctive relief through the All Writs
23 Act, based on the express congressional purpose of the 1514 and its express powers of injunctive
24 relief. The state of Washington argues there is no private right of action by citing only

unpublished cases. However, there is indeed a private right action for preemption generally, and further it would be illogical to require private rights of action for any preemption and federal intervention. *"Although the [Defendant] asserts that the express conferral of a private right of enforcement on petitioners is a necessary predicate to a claim for injunctive relief under the Supremacy Clause, the well-established rule in both this court [9th Circuit] and in other circuits is precisely the opposite." Indep. Living Ctr. of S. California, Inc. v. Shewry*, 543 F.3d 1050, 1058 (9th Cir. 2008). The 9th Circuit added, *"Our holding in Bud Antle is consistent with established practice in the other circuits, which have universally affirmed the right of private parties to seek injunctive relief under the Supremacy Clause regardless of whether the allegedly preemptive statute confers any federal "right" or cause of action." Id.* The Supreme Court explained the purposeful limits of the Anti-Injunction Act, noting it was even "amended in 1874 to allow federal courts to enjoin state-court proceedings which interfere with the administration of a federal bankruptcy proceeding. Rev.Stat. s 720. The Interpleader Act of 1926, 28 U.S.C. s 2361, the Frazier-Lemake Act, 11 U.S.C. s 203 (1940 ed.), and the Federal Habeas Corpus Act, 28 U.S.C. s 2251." *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 640 (1977). As for 18 USC 1514 specifically, the 9th Circuit instructed: *"Actions filed without legitimate purpose may qualify as unlawful harassment and hence constitute an attempt to intimidate or unlawfully influence a witness. See United States v. Lewis, 411 F.3d 838, 845–46 (7th Cir.2005) (upholding application of 18 U.S.C. § 1514 to enjoin a civil lawsuit filed for illegitimate purposes as witness harassment); United States v. Tison, 780 F.2d 1569, 1571–73 (11th Cir.1986) (same). United States v. Kilbride*, 584 F.3d 1240, 1262 (9th Cir. 2009). The All Writs Act grants the federal courts the power to offer injunctive relief as authorized by federal statutes, even based on legislative intent instead of express terms, including through preemption, and specifically for federal witness intimidation by state court lawsuits. *Bud Antle, Inc. v. Barbosa*, 45 F.3d 1261,

1269 (9th Cir. 1994). As discussed, Gjovik is of course willing, if necessary, to remove the state court appeal to federal court as to ensure there is federal supervision over the matter and to bring the *ex parte* Petition into court (which per the Order, Gjovik cannot motion for herself). (e.g., Docket #10, Notice of Pendency, at pg 8).

16. Page 13 ¶ 1. The state of Washington writes, "*the most [Gjovik] has shown is that she has made a complaint to certain federal agencies who may or may not take some sort of action.*" The state of Washington insinuates that Petitioner was justified in her allegations that Gjovik's cases are "meritless." However, Gjovik has a docketed case for SOX, CERCLA, and OSHA whistleblower retaliation with the U.S. Department of Labor Whistleblower Protection Program, following an initial finding of merit. *Ashley Gjovik v Apple Inc* (AppleInc/Gjovik/9-3290-22-051).[7] (e.g., Docket #10, at pg 3). Gjovik has docketed charges with the NLRB under review by NLRB General Counsel at this moment, as well as at least a preliminary investigation underway with two U.S. SEC investigators.[8] The importance of Gjovik's charges and cases have led to an enormous amount of press coverage including but not limited to Bloomberg, The New York Times, Financial Times, CNN, Index of Censorship, Telegraph, Slate, and more.[9] However, as Gjovik noted in her Motion, there need not be a case pending for injunctive relief to be triggered and the case need not be criminal. To only protect federal witness from intimidation in criminal

---

[7] Apple faces probe over whether it retaliated against whistleblower, US labour department inquiry follows claims by ex-senior engineering program manager, Financial Times (Dec 13 2021), https://www.ft.com/content/973aae8d-21d9-4e84-8912-ead071c7935d

[8] Financial Times: "US labour board examines retaliation claims against Apple: Senior engineering program manager's allegations include workplace harassment and job reassignment," Sept 2 2021, https://www.ft.com/content/484fa8be-925e-495c-91ff-54950b112754 ; Reuters: "U.S. labor agency probes two complaints from Apple workers," Sept 2 2021, https://www.reuters.com/article/apple-workers/update-1-u-s-labor-agency-investigating-two-complaints-from-apple-workers-idUSL1N2Q42UW

[9] https://www.ashleygjovik.com/press-on-ashleys-apple-saga.html

1  matters but not protect witnesses from attempts to dissuade testifying in agency matters would be
2  illogical.

3      17. Page 14 ¶ 1-2: The state of Washington twice refers to Gjovik's attempt to focus legal
4  analysis on the conduct the Judge cited as the basis of her order, as "cherry picking," and also
5  cites allegations made by Petitioner against Gjovik which were apparently found not to have
6  merit, as they were not mentioned in the Judge's decision at all. Petitioner was unable to provide
7  any evidence to substantiate those allegations. The March 1 2022 hearing transcript has no
8  mentions of stoking, stoke, blackmail, or CPS. The Petitioner raised her claim of "extortion" a
9  single time in the hearing (page 12), however Gjovik's own evidence submitted for the hearing
10 (page 23-46) of the conversation with that supposed witness directly rebuts Petitioner's claims.
11 Further, Petitioner's own evidence (page 62-66) includes the February 5 2022 email where
12 Petitioner notes "*Yes, I reported you to the FBI [for extortion]. I was in a terrible place mentally,*
13 *I had relapsed.*" (page 64). The state of Washington here re-invigorates bogus and retaliatory
14 allegations against a federal witness, and gives these allegations credibility as the state of
15 Washington has now formally expressed concerns, on the federal court record, about Gjovik
16 based on these allegations. Again, these allegations were not the basis of the decisions against
17 Gjovik, or even mentioned by the state court Judge and should not be relevant for the Defense.

18     18. Page 15 ¶ 1: Gjovik invited this Court to remove the state case to federal court, but
19 noted she did not believe she could serve or otherwise contact Petitioner without breaking the
20 order. (e.g., Docket #10, Notice of Pendency, at pg 8). Further, the Order itself was based on a
21 Legal Filing. Gjovik has every reason to think Petitioner will further retaliate against her, even
22 based on a legal filing or service of that filing, as she has done so previously and now the state of
23 Washington is providing credibility to that action.

24

REPLY TO RESP FOR MTN FOR EMR. INJ.      ASHLEY M. GJOVIK
CASE NO. 2:22-CV-00807-RAJ-BAT      PO BOX 119 SANTA CLARA, CA 95050
- 9 -      (408) 883-4428

1  19. Page 16 ¶ 1: The state of Washington again raises unsubstantiated allegations against Gjovik which the state court did not act upon, and now even referring to them as "chilling." There is no reason for the state of Washington to raise allegations here that were not acted upon by the court. In doing so, the state of Washington now helps Petitioner argue to the appellate court that her unsubstantiated allegations should be reconsidered. Gjovik summarized Petitioner's allegations and evidence for the sake of judicial economy, as Petitioner made an enormous amount of unsubstantial and unrelated comments and allegations, most of which were untrue or misrepresentations. As written in her Complaint, Gjovik also submitted her own evidence that directly rebutted the majority of these allegations. (e.g., Dkt #1, at page 25). Further, Petitioner had not submitted any evidence to substantiate her own claims. (e.g, Dkt #1, at page 20). Gjovik also clearly noted Petitioner's allegations of extortion in her Complaint (e.g. Dkt. #1, at page 30) along with Petitioner's other allegations criminal conduct and of specific "harassing" statements (e.g, Dkt #1, at page 31-33). Inferences from the state of Washington that Gjovik is trying to hide these allegation from the Court are concerning.

20. Page 16, ¶ 3: Per the state of Washington's request, the full transcripts and records from the state hearings have now been submitted as Docket 15. The state of Washington has already seen from Exhibits where Petitioner wrote in her sworn statement to the state court, which the Judge said she read before she granted the Order against Gjovik, that Petitioner thought Gjovik's "*harassment'* of Petitioner "appears to be in part for exercising [Petitioner's] own first amendment rights in expressing [Petitioner's] opinion that [Gjovik's] retaliatory discharge case would be hard to prove because of the bonafide fact that [Gjovik] had leaked private documents about unreleased intellectual property owned by Apple to the press." (e.g., Docket 11, #2 Exhibits, pg7 – note, Gjovik disputes this assertion). Petitioner added, "I took the time to apologize for exercising those first amendment rights, because it clearly hurt [Gjovik's]

feelings, despite my right to say such things." *Id*. (referencing her threatening email to Gjovik on Feb 5 2022 which demanded Gjovik remove allegations about her from Gjovik's federal charges, "*You need to remove all assertions that I am accounts trolling you*."). (e.g., Dkt #1, Exhibit I). Petitioner admitted Gjovik was upset because Petitioner has been repeatedly defaming Gjovik by telling people Gjovik was terminated for "leaking IP." Not even Apple Inc claims Gjovik leaked actual Intellectual Property.[10] Further, in the February 1 2022 TRO hearing, Petitioner testified, "This is what caused me to do this, is because the director of security at the National Labor Relations Board believes that [Gjovik] filed a charge with the intent to harass me on January 11th." (e.g., Docket #1, pg 81, quoting Feb 1 2021 ex parte hearing transcript). As discussed, the NLRB disputes Petitioner's statement. (e.g., Docket #1, Attch #1, pg 67, Exhibit L: NLRB Denials). After seeing all of this, and the *Petition for the Order* itself directly noting Gjovik's NLRB charge against Apple and alleging it was made in "bad faith," its unclear why the state of Washington completely disregards Petitioner's retaliatory animus and intent, as she herself put if forward in testimony and evidence.

21. Page 17, ¶ 2: The state of Washington cites RADCLJ 4.3 (assumably RALJ 4.3) but does not explain how Gjovik could request a stay while being prohibited from communicating Petitioner's name, communicating any information about Petitioner, or making any contact with Petitioner (all of which would break the order).[11]

### III.  CONCLUSION

22. In its *Response* to Gjovik's *Emergency Motion for Injunctive Relief* due to federal preemption and federal witness intimidation, the state of Washington concurrently puts forward

---

[10] Apple Wanted Her Fired. It Settled on an Absurd Excuse," Oct 14 2021, https://gizmodo.com/apple-wanted-her-fired-it-settled-on-an-absurd-excuse-1847868789

[11] https://www.courts.wa.gov/court_rules/pdf/RALJ/CLJ_RALJ_04_03_00.pdf

1  criminal allegations against Gjovik that even the state Judge in the Court of Limited Jurisdiction

2  did not find merit in, while also arguing for States Rights & Sovereign Immunity. The state of

3  Washington argues Gjovik will have a fair hearing in the state Superior Court, while itself

4  weighing in on the merits of Gjovik's case, including highly inflammatory allegations against

5  Gjovik completely unrelated to the Judge's actual finding. If Gjovik submits an appellant brief to

6  the state Superior Court by June 30th, at risk of incarceration, she of course will need to include

7  notice and documentation on all of these federal discussions, which now includes the Assistant

8  Attorney General of the state of Washington apparently accusing Gjovik of extortion, with no

9  evidence to support such an allegation.

10  23. The content in the *Response* to Gjovik's *Motion* is further evidence of the desperate

11  need for federal intervention and supervision in this matter.

### IV.   CERTIFICATE OF SERVICE

I hereby certify that on June 24, 2022, I did serve the above Motion for Preliminary Injunction through the Court's ECF filing system pursuant to Fed. R. Civ. Proc. 5(b)(2)(E) to the following counsel for all Defendants: the State of Washington, Governor Inslee, and Attorney General Ferguson (as represented by Asst. Attorney General William McGinty).

Respectfully submitted,

DATED: June 24, 2022, 3:00am

*Ashley Gjovik*

ASHLEY M. GJOVIK
Pro Se